James E. **BLOMQUIST**, David A. Dawson, Larry E. Gray, and Gerard B. Reith

**Plaintiffs-Appellants,**

v.

Thyra **THOMSON**, Secretary of State for the State of Wyoming, Defendant-Appellee.

No. 84-1651.

United States Court of Appeals, Tenth Circuit.

July 23, 1984.

James C. Linger of Linger & Seymour, Tulsa, Okl. (Robert E. Skar of Casper, Wyo., with him on brief), for plaintiffs-appellants.

Rowena L. Heckert, Asst. Atty. Gen. Cheyenne, Wyo. (A.G. McClintock, Atty. Gen., Cheyenne, Wyo., with her on the brief), State of Wyo., for defendant-appellee.

Before DOYLE, McKAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Plaintiffs are members of the Libertarian Party of Wyoming. They filed suit on August 4, 1983, challenging the constitutionality of the Wyoming election laws regulating ballot access by minority parties. The district court granted summary judgment for plaintiffs on February 17, 1984, 591 F.Supp. 768, holding unconstitutional various provisions of the Wyoming Election Code, Wyo.Stat. §§ 22–1–101 *et seq.* (1977). Rec., vol. I, at 69. The court deferred ordering remedial action to give the Wyoming legislature an opportunity to amend the election code in light of the court's opinion.

On March 9, the legislature amended the code to provide in pertinent part that a new political party seeking ballot access must file by June 1 of an election year a petition containing the signatures of 8,000 registered electors, a majority of whom may not reside in the same county (hereinafter referred to as the two-county rule).[1] Wyo. Stat. § 22–4–201(a), (d) (1984). The law further provides that such a petition may be circulated as early as June 1 of the previous year. *Id.* § (e).

The Secretary of State asked the district court to approve the amended election code. Plaintiffs objected and argued that the new law is unconstitutional as applied to them in the 1984 election year because they would have only two months instead of twelve to meet the heightened signature requirements, and that the two-county rule is unconstitutional in any event. The State agreed to a compromise under which plaintiffs could qualify as a new political party for this election year by obtaining only 1,333 petition signatures by June 1, instead of 8,000.[2] The court rejected the proposed

---

1. 8,000 signatures constitutes approximately 3½ % of the registered voters in Wyoming, and 5% of the total congressional vote in 1982.

2. This compromise was presented orally to the court. In their brief on appeal, plaintiffs assert that the State also agreed to waive the requirement that a majority of the signers could not be

settlement without comment, and approved the amended code on April 5, 1984.

Plaintiffs sought this expedited appeal, contending that the two-county rule is unconstitutional, and that the amended law is otherwise unconstitutional as applied to them in the 1984 election year. We agree with both contentions and accordingly we reverse.

## I.

### THE TWO-COUNTY RULE

As amended, the law governing the formation of a new political party in Wyoming provides: "To be valid, a petition shall contain the names and signatures of not less than eight thousand (8,000) registered electors, eligible to vote in this state, *the majority of whom may not reside in the same county.*" Wyo.Stat. § 22–4–201(d) (emphasis added). Plaintiffs assert that the restriction italicized above, the two-county rule, is an unconstitutional denial of equal protection because it discriminates against residents in more populated counties.[3] The State argues that the rule is necessary to assure that a new party has a fairly broad base of support and to prevent fraud.

The analysis governing constitutional challenges to specific provisions of a state's election laws has been described recently by the Supreme Court.

"[A court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights."

*Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983).

Thus we must first determine the character and magnitude of the constitutional injury asserted here. In *Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969), the Supreme Court examined a state rule governing the nominating petitions of independent candidates under which the required 25,000 signatures had to include 200 signatures from each of at least 50 of the 102 state counties. The Court viewed the multiple-county requirement as contrary to voter equality. "The idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government." *Id.* at 819, 89 S.Ct. at 1496. The Court held that the restriction violated the Equal Protection Clause of the Fourteenth Amendment because it "discriminates against the residents of the populous counties of the State in favor of rural sections. It, therefore, lacks the equality to which the exercise of political rights is entitled under the Fourteenth Amendment." *Id.*

The Seventh Circuit subsequently held unconstitutional a state law requiring a new party seeking ballot access to submit a

---

from the same county. In oral argument before this court the State conceded that it had agreed to the reduced number of signatures but did not concede that it had waived the two-county rule. In view of our holding in Part I *infra* striking down the two-county rule, we need not address this disagreement.

**3.** The State argues that plaintiffs lack standing to challenge the two-county rule because, in view of their inability to gather the required signatures by June 1 of this year, they have not been injured by the requirement they challenge. To satisfy the Article III standing requirement, "the plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979). We do not believe that plaintiffs must actually gather 8,000 signatures to have standing to challenge the two-county rule because they are clearly adversely affected by the rule from the beginning of their petition drive. To comply with the rule, they must conduct a more expansive campaign over more sparsely populated areas, entailing additional expense and effort. This may in itself hinder plaintiffs' ability to obtain the required number of signatures.

petition with 25,000 signatures, not more than 13,000 of which could come from one county. The court relied on *Moore* to hold that the two-county rule applied to party recognition petitions "directly affects the fundamental right of a class of persons to 'vote effectively.' " *Communist Party v. State Board of Elections*, 518 F.2d 517, 521 (7th Cir.), *cert. denied*, 423 U.S. 986, 96 S.Ct. 394, 46 L.Ed.2d 303 (1975). Under the rationale of *Moore* and *Communist Party*, we conclude that the Wyoming two-county rule directly and substantially burdens constitutional rights.

In accordance with *Anderson*, we must next identify and evaluate the justifications for the two-county rule offered by the State in this case. Wyoming contends that the rule is necessary to assure that a new party has a fairly broad base of support. Brief of Appellee at 20. This justification was specifically rejected in *Moore*.[4] "It is no answer to the argument under the Equal Protection Clause that this law was designed to require statewide support for launching a new political party rather than support from a few localities." 394 U.S. at 818. We are not persuaded that the State has a compelling interest in requiring that supporters of a new political party be scattered across the state. Wyoming also asserts, without explanation, that the rule diminishes the possibility of fraud, a contention that the court did not appear to find persuasive in *Communist Party*, 518 F.2d at 522. We likewise decline to credit it here, particularly when the State offers no analysis or factual support.

▮ In sum, we conclude that the burdens on constitutional rights imposed by the two-party rule have not been justified by the State. After weighing all the factors, we hold that Wyo.Stat. § 22–4–201(d) is unconstitutional insofar as it provides that a majority of the required 8,000 signers may not reside in the same county.

## II.

### THE 1984 ELECTION

We next address plaintiffs' argument that the amended election code is unconstitutional as applied to them in the 1984 election year. Given our conclusion in Part I *supra* that the two-county rule is unconstitutional, we need only consider whether the requirement that plaintiffs gather 8,000 valid signatures by June 1, 1984, *see* Wyo. Stat. § 22–4–201(a), impermissibly burdens constitutional rights. The June 1 date is 102 days before the Wyoming primary elections on September 11. *See id.* § 22–5–201.

As in Part I, *supra*, we begin our analysis by considering the character and magnitude of the asserted constitutional injury. *See Anderson*, 103 S.Ct. at 1570. An early filing deadline that

> "falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and—of particular importance—against those voters whose political preferences lie outside the existing political parties."

*Id.* at 1572. In *McLain v. Meier*, 637 F.2d 1159 (8th Cir.1980), under factual circumstances identical in all pertinent respects to those before us, the court concluded that a June 1 deadline for new party recognition petitions placed a significant burden on the fundamental rights of voting and political association. Requiring plaintiffs to comply with the new election code for the 1984 election directly burdens those same rights. The June 1 deadline prevents a new party from seeking support at a time when such support is most likely to crystallize—after the established political parties have put forth their candidates and platforms. *See McLain*, 637 F.2d at 1164; *accord Anderson*, 103 S.Ct. at 1570–71. The deadline is particularly troublesome when applied to plaintiffs in the 1984 election year because

---

**4.** The State appears to believe that *Brown v. Thomson*, 462 U.S. 835, 103 S.Ct. 2690, 77 L.Ed.2d 214 (1983), provides some support for this argument. That case was directed to different concerns and is not relevant to the question at issue here.

it drastically reduces the time available to obtain signatures from the one-year period normally provided.[5]

■ Having concluded that voting and associational rights are directly burdened by applying the amended law to plaintiffs in 1984, we must examine the interests offered in justification by the State. Wyoming contends that the law assures that a new party can demonstrate a modicum of support, and keeps the ballot to a reasonable size so that the winner will be the choice of a majority or strong plurality. The State also argues that the June 1 filing deadline is necessary to provide the Secretary of State sufficient time to check the validity of the signatures before the primary candidate filing period begins in late June.[6] Even if we were to assume that these reasons would be sufficient under ordinary circumstances, the State in this case agreed to a compromise whereby plaintiffs would be required to obtain only 1,333 signatures to qualify as a new political party this year.[7] Plaintiffs represented to this court that they had gathered 3,735 signatures by the June 1 deadline. We do not see how the State can argue on appeal that it has a compelling interest in plaintiffs meeting the 8,000 signature requirement this year when it specifically agreed below that 1,333 signatures would satisfy that interest due to the shortened time for obtaining signatures. Given the substantial constitutional rights affected, we conclude that if plaintiffs have obtained 1,333 valid signatures, they must be given new political party status for purposes of the 1984 election.

Reversed and remanded for further proceedings in light of this opinion.

5. We reject the State's argument that plaintiffs could and should have begun to obtain signatures before the district judge ordered remedial action. After prevailing on their summary judgment motion, plaintiffs could not have been expected to expend the funds necessary to begin circulating petitions when the law pertaining to such petitions was in limbo.

6. Plaintiffs indicated in oral argument that the Libertarian Party in Wyoming is not likely to have a primary contest in 1984.

7. In order to retain its status for the future, a political party must field a candidate for the United States Congress who receives at least ten percent of the total vote cast for that seat. Wyo. Stat. § 22-1-102(g).