**LIBERTARIAN PARTY OF OKLAHOMA; Gordon Mobley, Chairman of the Oklahoma Libertarian Party; D. Frank Robinson; Charles Burris; Anne Wampler; Thomas Winter; David Bergland, Plaintiffs,**

v.

**The OKLAHOMA STATE ELECTION BOARD; Grace Hudlin, Chairman of the Oklahoma State Election Board; Betty McElderry, Vice-Chairman of the Oklahoma State Election Board; Lee Slater, Secretary of the Oklahoma State Election Board; and Mona Lambird, Member of the Oklahoma State Election Board, Defendants.**

No. CIV-84-1342-W.

United States District Court, W.D. Oklahoma.

July 30, 1984.

 

James C. Linger, Linger & Seymour, Tulsa, Okl., for plaintiffs.

Michael C. Turpen, Atty. Gen., and F. Andrew Fugitt, Asst. Atty. Gen., Oklahoma City, Okl., for defendants.

## ORDER

LEE R. WEST, District Judge.

Before the Court for its consideration is a motion by defendants requesting relief from the Court's order of July 13, 1984, granting plaintiffs' motion for summary judgment. The defendants have also requested an enlargement of time in which to respond to plaintiffs' motion for summary judgment.

The Libertarian Party of Oklahoma and several individual members of the party initiated this lawsuit on May 31, 1984, seeking relief from certain state statutes restricting the ability of minor party candidates to be placed on the ballot. In their complaint the plaintiffs alleged that 26 O.S. §§ 1–108, 1–110, 4–112, 7–127(1), and 7–129 as applied to the plaintiffs for the 1984 Oklahoma general election were unconstitutional. According to the plaintiffs, these statutes as applied in the circumstances of this case violate their rights guaranteed by the First and Fourteenth Amendments to the United States' Constitution. The plaintiffs requested relief in the form of both temporary and permanent injunctions, a declaration that the statutes were unconstitutional as applied, and writs of mandamus and prohibition.

On June 6, 1984, a hearing on plaintiffs' motion for preliminary injunction was held. At the conclusion of the evidence, the Court ruled that a preliminary injunction should not issue due to plaintiffs' failure to persuade the Court that such extraordinary relief was justified. The Court did note its concern over the relatively large number of signatures required and the brief period for procuring the signatures. The Court admonished the parties to proceed as quickly as possible to define the issues and submit the case for a determination on the merits.

At the close of the proceedings, the Court informed the parties that it would move as expeditiously as possible to reach a determination on the merits of this action due to the time limitations imposed by the upcoming election.

On June 6, 1984, plaintiffs filed a Request for Admissions. At the conclusion of the June 6th hearing on the motion for preliminary injunction, after discussing the pressing time requirements, counsel for defendants agreed to respond to the request for admissions within one week. No response to the request was filed nor was an extension of time sought. As of this date, defendants have not responded to the request for admissions.

On June 25, 1984, plaintiffs filed a motion for summary judgment. Rule 14(a), Local Rules for the United States District Court for the Western District of Oklahoma, requires that the opposing party respond to such a motion within 15 days. When the motion had not been responded to by July 13, 1984, the Court deemed the motion confessed as required by Rule 14(a).

Defendants now urge the Court to set aside its order of July 13th granting plaintiffs' motion for summary judgment. Defendants seek relief pursuant to Rule 55 and Rule 60, Fed.R.Civ.P. According to the defendants, their mistaken belief that they had twenty days to respond to the motion for summary judgment is a valid basis for relief under either Rule 55 or Rule 60. Additionally, defendants contend that the interest of justice, equity, and fairness require the Court to set aside the default. The defendants also argue that they are entitled to relief from the summary determination because of the prejudicial impact on the defendants.

In response to this motion, plaintiffs argue that they have been prejudiced by defendants' failure to proceed in this case in a timely fashion. Additionally, plaintiffs argue that they will suffer even greater prejudice if the Court's order of July 13th is vacated. According to the plaintiffs, critical time for party registration, organization, fund raising, and dissemination of information has already been lost due to defendants' unwarranted delays.

The Court first notes that neither Rule 55 nor Rule 60 apply in this case. On July 13th, the Court entered an order granting plaintiffs' motion for summary judgment, but the Court has not entered a judgment in the case. According to Rule 58, Fed.R. Civ.P., a judgment must be set forth in a separate document. *United States v. Indrelunas*, 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973). While the Court was preparing a judgment and order detailing specific legal and factual findings, the parties informed the Court that they were in the process of agreeing to a judgment which would be submitted to the Court for approval. In light of this information, the Court delayed entering an order and judgment. Apparently, these negotiations failed and the current motion was filed.

■ The Court does, of course, have the power to reconsider its previous orders and vacate them if that result is mandated by the factual situation. *Dessar v. Bank of America National Trust & Savings Association*, 353 F.2d 468 (9th Cir.1965).

The Court has reconsidered its order of July 13, 1984, and defendants' arguments in support of vacating the order and has determined that the order should not be set aside. There are neither legal nor equitable reasons for vacating the order.

There was adequate evidence before the Court to permit summary judgment. Rule 56(e), Fed.R.Civ.P. provides:

"... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

In this case, because of the defendants' failure to respond in a timely fashion, plaintiffs' motion for summary judgment was

deemed confessed. The following factual information was before the Court and undisputed. In order to form a new political party and be placed on the Oklahoma ballot a group must file a petition bearing the signatures of registered voters equal to at least 5% of the total votes cast in the last general election. 26 O.S. § 1–108. According to the State Election Board, these signatures must be gathered within 90 days of filing notice of intent to form a political party. In order to be retained on the ballot for the next general election the party must receive at least ten percent (10%) of the total votes cast. 26 O.S. § 1–109.

The petition signature requirement for ballot access for a political party in Oklahoma is more severe than that of any other state. Only eight states have ballot access requirements of 2% or more. Aside from Oklahoma, only three other states have a requirement for ballot access of 5% of the vote in a previous election, and each of these states allows at least one year to gather the necessary signatures. In Oklahoma all the signatures must be gathered within 90 days. Moreover, each state which has a 5% petition requirement has a retention requirement which is much less severe than Oklahoma's. Although most other states have ballot access statutes with significantly less stringent requirements, these states do not have problems with overcrowding on their election ballots.

The current statutes were enacted by the Oklahoma Legislature in 1974. Prior to that time, the statutes required 5,000 signatures on the petition for the formation of a new political party. Even with the more lenient requirements of that statute, only the American Party in 1968 was able to get on the Oklahoma ballot in the period from 1945 to 1974. It appears that the prior statutes were sufficient to prevent overcrowding of the ballot.

In addition to the rigorous standards of the Oklahoma ballot access statutes, the plaintiffs also were not allowed to petition freely in shopping malls, campuses, or in other public areas. The Libertarian party petitioners were not able to contact as many citizens due to the restrictions on petitioning.

A further hindrance to the petitioning efforts of the Libertarian Party was the inclement weather during the brief period allowed to obtain signatures in 1984. Between March 1 and May 29, the Libertarian Party secured 28,894 signatures while 44,157 signatures were needed to fulfill the 5% requirement. One witness testified that at least twice as many signatures could have been obtained if the weather had not been inordinately bad during the petitioning drive. (Affidavit of Charles Burris, p. 7)

Voter interest in signing ballot access petitions is significantly lower during the March to May period when the signatures must be gathered in Oklahoma than is interest during the summer months. Many people prefer to evaluate major political party platforms and candidates before signing this type of petition.

In Oklahoma in 1984, the primary election day is August 28, the run-off election is September 18, and the general election is November 6. Oklahoma does not permit write-in voting. The only two political parties currently recognized by the State of Oklahoma are the Republican and Democratic parties. Oklahoma voters may only register as Republicans, Democrats, or Independents.

The State may use its police power to impose some restrictions on candidate eligibility in order to ensure that elections are fair, honest, and orderly. *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). The rights of voters and the rights of candidates cannot be easily separated; therefore, ballot access restrictions do impact voters. This impact on voters affects basic constitutional rights guaranteed by the First and Fourteenth Amendments. *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). These basic constitutional rights are the rights of individuals to associate for the advancement of political beliefs and the right of qualified voters to cast their vote effectively. *Williams v.*

*Rhodes,* 393 U.S. 23, 30–31, 89 S.Ct. 5, 10–11, 21 L.Ed.2d 24 (1968). The validity of restrictions which impact those rights depends on whether those restrictions are necessary to further compelling state interest. *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974).

■ The Supreme Court has upheld the validity of requiring the signatures of five percent (5%) of the number of voters eligible to vote in the last election to gain access to the ballot. *Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). However, the Georgia statute in question in that case varied in two significant respects from the Oklahoma statutes. Groups seeking to form new political parties in Georgia were given twice as long to obtain the required number of signatures as are groups in Oklahoma. The Georgia statutes also permitted write-in voting which is prohibited in Oklahoma. While the Court was unwilling to grant the preliminary relief requested by the plaintiffs, after thoroughly reviewing the applicable law the Court is persuaded that Oklahoma's ballot access laws which require a high number of signatures on petitions, but allow only a 90-day period for obtaining these signatures, are constitutionally infirm.

The unconstitutionality of these statutes is particularly evident in light of the undisputed facts of this case. The combination of the short time allowed for petitioning, the large number of signatures required, the prevention of the party's effective solicitation of signatures, and the unusually inclement weather during the petitioning period resulted in a deprivation of these plaintiffs' constitutional rights. Since there are no remaining material issues of fact, summary judgment is appropriate.

■ In addition to determining that the Court's order of July 13 should not be vacated due to legal error, the Court has also determined that as a matter of equity the order cannot be vacated. Defendants argue that the order should be set aside because the interest of justice, equity, and fairness dictate that result. We disagree. There are two reasons why the Court finds that vacating its July 13th order would be unjust and inequitable. First, the plaintiffs have been prejudiced by defendants' failure to proceed in a timely fashion. Second, defendants' failure to respond to this motion was at best inexcusably negligent.

While defendants have chosen to ignore in their brief any possible prejudice to plaintiffs caused by a delay of even a few days, they produced cogent evidence of the critical pressure of time at the hearing on plaintiffs' motion for preliminary injunction. The Assistant Secretary of the Oklahoma State Election Board, Tom Stanfill, testified that after June, time was critical for the Board. Stanfill pointed out that candidates must file between July 9th and 11th and then each county has to begin the procedure for certifying the candidates before the ballots can be printed. The work load increases rapidly during the summer, according to Stanfill, so that the primary can be held in late August.

The filing period for candidates has now passed without an opportunity for Libertarian candidates to file. While the Court can remedy that problem, the days lost for campaigning, organizing, and fund raising prior to the general election cannot be recouped. Due to the short period of time before the election, time is an important factor in this case. Both parties agreed during the Court's June 6th hearing that time was critical. During that hearing, the Court specifically required the parties to diligently proceed in this matter due to the time factor. Defendants cannot now ignore the time limitation and ignore the harm done to plaintiffs by this needless delay.

Defendants' protestation that it has been prejudiced by the Court's order granting summary judgment is true. However, the party against whom a decision is made is necessarily prejudiced by the determination. It is not prejudice but undue prejudice which must be the object of this Court's attention. The prejudice to defend-

ants in this case is the result of their own nonfeasance and is not unfair.

The Court also finds the defendants' argument that they should be relieved of the consequences of their negligence because they did not know when the response was due to be utterly meritless. It is the duty of all counsel appearing before the Court to be familiar with the local rules. Principles of sound judicial administration, particularly in this district with such a heavy caseload, require that the Court enforce the rules diligently and consistently. It is evident in this and other cases [1] that the state expects to be allowed to file its responses at its own leisure without regard for either the rules or the consequences to other parties involved. This lax attitude which assumes the Court's complicity cannot be tolerated when it results in undue prejudice to the opposing parties. The Court will not tolerate this inexcusable conduct by any party, not even the State. While the Court finds it disturbing that an issue of such importance must be disposed of in a summary fashion, the rules must be applied evenhandedly and that evenhandedness mandates only one result—the affirmation of this Court's order of July 13, 1984.

Accordingly, it is the order of this Court that defendants' Motion to Set Aside should be and hereby is DENIED. Defendant's Motion for Extension of Time and Consolidation are likewise DENIED. Judgment will be entered pursuant to the Court's order of July 13, 1984. All defendants are hereby ordered to immediately facilitate all relief granted in the judgment.

### JUDGMENT

This action came on for hearing before the Court, Honorable Lee R. West, District Judge, presiding, and the issues having been duly heard and a decision having been duly rendered.

IT IS ORDERED AND ADJUDGED that the plaintiffs be granted the following re-

lief. The Court hereby orders that the defendant Members of the Oklahoma State Election Board, and all their successors in office, are hereby enjoined from enforcing, applying, or implementing Title 26, Oklahoma Statutes, Section 1–108, 1–110, 4–112, 7–127(1), and 7–129, as applied to the plaintiffs herein, for the 1984 Oklahoma General Election and the facts and circumstances relating thereto. Further, the defendant Members of the Oklahoma State Election Board, and all their successors in office, are hereby ordered to take such steps as are necessary to place the Libertarian Party candidates on the Oklahoma ballot for the purpose of the 1984 Oklahoma General Election.

Title 26, Oklahoma Statutes, Section 1–108, 1–110, 4–112, 7–127(1), and 7–129, as applied to the plaintiffs herein for the 1984 Oklahoma General Election and the facts and circumstances relating thereto, are hereby declared unconstitutional as violative of the First Amendment right of political association and the related rights to vote and of reasonable access to the ballot, and also violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution, Title 18, United States Code, Section 594 and 595, and Title 42, United States Code, Section 1983, in that the aforesaid statutes of the Oklahoma Election Code are not framed in the least restrictive manner necessary to achieve the legitimate State interest in regulating ballot access.

The defendant Members of the Oklahoma State Election Board are hereby enjoined from further enforcement of the above statutes in any manner inconsistent with this judgment.

Finally, counsel shall confer within ten days from the date of this judgment in an attempt to agree on a new method by which Libertarian Party candidates in Oklahoma in 1984 may be placed on the Oklahoma General Election ballot in a manner

---

1. The Court found it necessary recently to send its representatives to the Attorney General to urge that his office respond in a timely fashion to petitions for writ of habeas corpus. This unorthodox action was necessary due to the repeated failure of the AG's office to respond to these petitions.

consistent with this judgment and in light of the fact that the filing deadline for partisan candidates in Oklahoma has already passed. In the event that counsel cannot agree on a remedy in light of this judgment, then this Court will decide on one upon the filing of an appropriate motion by either of the parties hereto.