The **POPULIST PARTY**, a National Political Organization, et al., Plaintiffs-Petitioners,

v.

Edward **HERSCHLER**, In His Official Capacity As the Governor Of The State of Wyoming, et al., Defendants-Respondents.

No. 84–2361.

United States Court of Appeals, Tenth Circuit.

Oct. 15, 1984.

Linda Steiner, Cheyenne, Wyo., and Fred R. Seipold and David Sasser, Seipold & Sasser, Boise, Idaho, for plaintiffs-petitioners.

A.G. McClintock, Atty. Gen., and Michael R. O'Donnell, Asst. Atty. Gen., State of Wyo., Cheyenne, Wyo., for defendants-respondents.

Before HOLLOWAY, Chief Judge, and BARRETT and McKAY, Circuit Judges.

PER CURIAM.

This case arose from Wyoming's refusal to grant the Populist Party and its candidates recognition on the Wyoming General Election Ballot for the 1984 General Election. Plaintiffs seek an injunction pending appeal[1] of the district court's denial of a motion for a temporary restraining order to compel Wyoming to include the Populist Party and its candidates on the November ballot.

**I**

The National Populist Party was formed in May 1984. On June 15, Bob Richards declared his candidacy for President of the United States. The Populist Party nominated its presidential ticket at its Tennessee Convention on August 17 through 19. The Populist Party of Wyoming organized shortly after the 1984 Wyoming primary and began to circulate petitions in mid-August to comply with the ballot access requirements of the Wyoming Election Code. On September 21, the Populist Party submitted petitions with 1,562 signatures to the Wyoming Secretary of State's office.

This case involves challenges to two features of the Wyoming Election Code. The first challenge is to the statutes regulating a candidate's ballot access as an independent candidate. The statutes require the candidate to file nominating petitions within 45 to 90 days of the general election, with signatures from at least 5% of the voters in the previous congressional election. Wyo.Stat. §§ 22–5–301, 22–5–307. For the 1984 general election, 7,964 signatures were required under this 5% requirement to place an independent candidate on the ballot.

The second challenge is to the requirements for forming a new political party. Section 22–4–201 requires that a new political party submit petitions to the Secretary of State's Office by June 1 of the general election year with the names and signatures of at least 8,000 registered voters.

The Wyoming Secretary of State ruled that the petitions submitted on behalf of the Populist Party with Bob Richards as its Presidential candidate were insufficient to form a new political party or to place his name on the 1984 general election ballot as an independent candidate.

The Wyoming Secretary of State ruled that the petitions were insufficient to place Bob Richards' name on the 1984 general election ballot as an independent candidate for President for three reasons. First, the 1,562 signatures were far less than the 7,964 required by § 22–5–301. Second, the 1,562 signatures were not on the proper petition form. Third, the appropriate certificates and affidavits were not filed with the petitions. I R. 40. In addition, although election officials only had time to check 1200 of the 1,562 signatures submitted, they ruled that 329 were invalid. Therefore, even assuming that the 362 unchecked signatures were valid, the Populist

---

1. An application for such relief "must ordinarily be made in the first instance in the district court." Fed.R.App.P. 8(a). The 1984 election, however, is almost upon us, and the order of the district court shows that seeking such relief there would not be practicable. We believe that the need for relief is so immediate that applica-

tion in the district court is not necessary in these circumstances. *See* 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 208.07, at 8–26 (1983); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice & Procedure,* § 3954, at 381 n. 5 (1977).

Party submitted only 1,233 valid signatures.

Wyoming's Secretary of State also ruled that the petitions to form the Populist Party were insufficient for three reasons. First, the 1,562 signatures submitted were well short of the 8,000 signatures required by § 22–4–201. Second, the petitions were filed over three months after the June 1 filing deadline. Third, only 450 of the signatures contained the required "verification circulators."

On September 28, the Wyoming Secretary of State certified general election candidates to the various County Clerks as required by § 22–6–101. Section 22–2–109 requires the county clerks to publish an election proclamation between September 27 and October 7. Section 22–6–107 requires that the county clerk possess general election ballots twenty-five days before the election.

On September 28, plaintiffs filed this action challenging certain provisions of the Wyoming Election Code on various federal and state constitutional grounds. The district court on October 4 denied plaintiffs' request for a temporary restraining order (TRO) to compel the Wyoming Secretary of State to place the Populist Party and its candidates on the 1984 general election ballot.

The district court balanced four factors: (1) likelihood of success on the merits; (2) irreparable harm to the movant if the TRO were not granted; (3) irreparable harm to other party if the TRO were granted; and (4) the public interest. The district court decided to deny the TRO for three reasons.

First, plaintiffs did not show that they likely would succeed on the merits. The court held that Wyoming had a "legitimate interest in requiring a new party seeking access to the ballot to make some preliminary showing of a significant modicum of support, in order to avoid confusion and waste by cluttering up the ballot with the names of frivolous parties and candidates, thereby ultimately discouraging voters and frustrating the election process." I R. 29. The court concluded that plaintiffs did not

show that their constitutional challenge to the signature requirements and to the deadlines for submitting petitions set forth in the Wyoming Election Code likely would succeed. The district court held that plaintiffs fell 100 signatures short of the 1,333 signature requirement applied in *Blomquist v. Thomson*, 739 F.2d 525 (10th Cir. 1984), pursuant to a compromise entered into between Wyoming and the Libertarian Party. The district court also stated that "[n]othing precluded the Populist Party from forming at an earlier date, and thereby from obtaining a greater time period within which to seek petitions." I R. 79.

We note that the 1,333 signature requirement accepted by the State in *Blomquist* is again accepted in the State's response in this court as a reduced requirement which the Populist Party had to meet for forming a party in lieu of the 8,000 signature requirement of § 22–4–201.

Second, the district court held that the balance of the equities and of the public interest supported its decision to deny the TRO. The court recognized that plaintiffs would suffer irreparable injury if the TRO were denied because they would be unable to participate in the 1984 general election. The court concluded, however, that "the interests of the public and the greater number of voters" compelled the denial of the TRO. I R. 31. The court focused on the substantial delay and additional expenditures to the counties and the possible infringement of the absentee voters' right to vote.

Third, the district court held that plaintiffs were guilty of laches by forming their party at such a late date, by not complying with the Wyoming Election Code, and by not "circulating their petitions so as to assure that they obtained 1,333 valid signatures." *Id.* at 32, The court concluded that this conduct "resulted in the very burdens [plaintiffs] now argue should compel the court to grant the [TRO]." *Id.* at 31.

The plaintiffs appealed from that order denying a TRO and have applied to this court for an injunction pending that appeal.

## II

We conclude that we should deny the motion for injunction pending an appeal on the ground that plaintiffs have not made a sufficient showing of likelihood of success on the merits after examining the constitutional claims under the appropriate standard.

In *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983), the Court noted that challenges to ballot access requirements "cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions." The Court stated that courts

> must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.

460 U.S. at 789, 103 S.Ct. at 1570.

"In ruling on a request for an injunction pending appeal, the court must engage in the same inquiry as when it reviews the grant or denial of a preliminary injunction." *Walker v. Lockhart*, 678 F.2d 68, 70 (8th Cir.1982) (per curiam). We therefore must examine whether plaintiffs have made a sufficient showing of likelihood of success on the merits under the *Anderson* standard. In making this determination, we must parse plaintiffs' constitutional challenge to the Wyoming Election Code. Plaintiffs appear to challenge both the statutes relating to placing an independent candidate for president on the 1984 General Election Ballot and the statutes relating to formation of a new political party.

Wyoming's ballot access restrictions implicate the rights of aspirants for political office as well as the rights of Wyoming's voters. The Court has recognized that "the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972). The Court has explained that ballot access restrictions "place burdens on two different, although overlaping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms." *Williams v. Rhodes*, 393 U.S. 23, 30–31, 89 S.Ct. 5, 10–11, 21 L.Ed.2d 24 (1968). Plaintiffs contend that Wyoming's ballot access restrictions infringe these protected rights.

Wyoming asserts two interests in support of its statutes. First, Wyoming contends, as the district court held, that the signature requirements serve the state's interest in "requiring a new party seeking access to the ballot to make some preliminary showing of a significant modicum of support, in order to avoid confusion and waste by cluttering up the ballot with the names of frivolous parties and candidates, thereby ultimately discouraging voters and frustrating the election process." I R. 29. *See, e.g., Clements v. Fashing*, 457 U.S. 957, 964–65, 102 S.Ct. 2836, 2844–45, 73 L.Ed.2d 508 (1982) (plurality opinion); *Jenness v. Fortson*, 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971).

Second, Wyoming contends that its statutory deadlines for submitting signature petitions protect the interests of its absentee voters. Wyoming asserts that to compel the inclusion of the Populist Party and its candidates on the ballot at this late date would infringe the right of absentee voters to exercise the franchise. Wyoming states that the 1984 general election ballots already have been printed; that the general election candidates already have been certified to the various county clerks; that election proclamations already have been published in local newspapers; and that thou-

sands of absentee ballots already have been mailed to the voters. Defendant's response to Plaintiffs' Emergency Motion 3–4.

We must examine plaintiffs' challenge to the Wyoming Election Code's statutes governing placing an independent presidential candidate's name on the 1984 ballot and the formation of a new political party in light of these interests.

### A. Placing Bob Richards' Name on the 1984 Ballot as an Independent Presidential Candidate

The Wyoming statutes require 7,964 signatures (5% of the voters in the 1982 Congressional election) on petitions filed between 45 and 90 days before a general election to place an independent presidential candidate on the ballot. Plaintiffs have failed to show a substantial likelihood of success on the merits of their challenges to both of these requirements.

#### 1. The 5% signature requirement

Both the Supreme Court and this court have upheld election laws restricting ballot access to independent candidates who file petitions with signatures representing 5% of the voters. *Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971); *Arutunoff v. Oklahoma State Election Board,* 687 F.2d 1375 (10th Cir. 1982) (dictum), *cert. denied,* —— U.S. ——, 103 S.Ct. 1892, 77 L.Ed.2d 282 (1983). *See generally Developments in the Law— Elections,* 88 Harv.L.Rev. 1111, 1124–25 n. 11 (1975) (surveying state statutory requirements for number of signatures needed to place names of independent candidates or candidates of minor parties on ballot).

Other courts, however, have questioned a 5% signature requirement. For example, in *Libertarian Party of Oklahoma v. Oklahoma State Election Board,* 593 F.Supp. 118 (W.D.Okla.1984), the district court questioned Oklahoma's 5% signature requirement in the context of a motion to reconsider its earlier order granting plaintiff's motion for summary judgment. The

district court distinguished *Jenness* on two grounds. First, Oklahoma allowed new political parties only 90 days to gather the signatures. Second, Oklahoma prohibited write-in voting. 593 F.Supp. at 122. As noted, however, we expressed approval of Oklahoma's 5% signature requirement in *Arutunoff,* which the district court did not analyze in *Libertarian Party of Oklahoma.* In this case, Wyoming was prepared to accept a substantially lower percentage, which would have been clearly constitutional. The plaintiffs have failed to reach even that minimal number.

Plaintiffs therefore have not made a sufficient showing of likelihood of success on the merits by their challenge to Wyoming's 5% signature requirement.

#### 2. The 45–90 day deadline

The 45–90 day deadline for presenting signature petitions to place an independent presidential candidate on the 1984 general election ballot likely would also survive constitutional scrutiny. The Court in *Anderson* struck down an Ohio statute requiring independent presidential candidates to file nominating petitions in March for the November election. The Court emphasized that the March filing requirement restricted the right of Ohio voters to seek a candidate other than the nominees of the two major parties. 460 U.S. at 790, 103 S.Ct. at 1570. We feel, however, that the Wyoming 45–90 day deadline appears consistent with *Anderson* and permits independent candidates to file nominating petitions after the major parties' conventions. *Cf. Anderson,* 460 U.S. at 800, 103 S.Ct. at 1576 ("Seventy-five days appears to be a reasonable time for processing the documents submitted by candidates and preparing the [primary election] ballot.")

### B. Formation of the Populist Party

Section 22–4–201 requires that a petition to form a political party must contain at least 8,000 signatures and be filed by June 1 in a general election year. Plaintiffs have failed to show a substantial likelihood of success on the merits of their challenge to this section.

## 1. The 8,000 signature requirement

The 8,000 signature requirement would most likely survive constitutional attack for the reasons discussed in *supra* Part A(1) concerning the 5% (7,964 for the 1984 general election) signature requirement. Moreover, both the district court and Wyoming here adopt the reduced 1,333 signature requirement for forming a new political party, a figure accepted by the parties and this court in *Blomquist v. Thomson*, 739 F.2d 525 (10th Cir.1984). Plaintiffs fell short of this figure, which represents less that 1% of the Wyoming vote in the 1982 congressional election.

## 2. The June 1 deadline

The June 1 deadline for filing the registration signatures is subject to constitutional challenge under *Anderson* and *Blomquist*. That deadline appears to run counter to the views in *Anderson* and *Blomquist* which would permit independent political parties to organize after the conventions of the major parties have chosen their tickets and platforms. *See Anderson*, 460 U.S. at 790, 103 S.Ct. at 1570; *Blomquist*, 739 F.2d at 528 ("The June 1 deadline prevents a new party from seeking support at a time when such support is most likely to crystalize—after the established political parties have put forth their candidates and

platforms."); *see also McLain v. Meier*, 637 F.2d 1159, 1164 (8th Cir.1980).

Even if there is such a constitutional infirmity, however, in the June 1 deadline, plaintiffs' failure to submit even 25% of the required 8,000 signatures on September 21 (well after the June 1 deadline and within the apparently permissible deadline discussed in Part IIA(2)) precludes us from granting the injunction pending appeal. Without deciding the merits of this issue, we conclude that the challenge to the 8,000 signature requirement would most likely fail. This in itself would mean that this constitutional claim does not entitle the plaintiffs to an injunction pending appeal to place Mr. Richards' name on the ballot as the Populist candidate.

### III

Plaintiffs have failed to show a substantial likelihood of success on the merits in the challenge to the signature and deadline requirements of the Wyoming statutes relied on in Wyoming's refusal to place Mr. Richards' name on the November ballot. We therefore deny the application for an injunction pending appeal from the district court's denial of the TRO.[2]

---

**2.** Ordinarily, denial of a temporary restraining order is not appealable. *See* 28 U.S.C. § 1292(a)(1); *Levesque v. Maine*, 587 F.2d 78, 79 (1st Cir.1978). There are, however, at least two exceptions to this general rule. Such an order is appealable when "the order in reality operates as a preliminary injunction, or when the order is appealable as a final order under 28 U.S.C. § 1291." *Id.* (citations omitted). To fall within the first exception "[w]e must find either that a full adversary hearing has been provided or that, in the absence of review, further interlocutory relief is unavailable." *Id.; see also Coalition for Basic Human Needs v. King*, 654 F.2d 838, 839 (1st Cir.1981) (stating rule from *Levesque*); *Berrigan v. Sigler*, 475 F.2d 918, 919 (D.C.Cir.1973) (denial of temporary restraining order normally not appealable, but exception made where denial serves for all practical purposes to render case moot, or where appellant's rights will be irretrievably lost absent review).

Plaintiffs sought a preliminary injunction and a temporary restraining order in the district court. The district judge held a hearing at which attorneys for both sides were present. He heard argument and considered affidavits. He then entered an order denying plaintiffs' motion for a temporary restraining order. Were we to rule that the plaintiffs may not appeal from the trial court's denial of their motion, plaintiffs would be unable to have their party and candidate placed on the 1984 election ballot. This order is appealable; otherwise plaintiffs' rights would be irretrievably lost. *See, e.g., Thournir v. Buchanan*, 710 F.2d 1461 (10th Cir.1983) (where plaintiffs challenged a ballot access statute, and sought a preliminary injunction before election, their appeal after the election from the denial of a preliminary injunction was moot).