Dr. John HAGELIN FOR PRESIDENT COMMITTEE OF KANSAS, Dr. John Hagelin, Jessie Nichols, Patricia Robinson, Wanda Fern Kelly, Plaintiffs-Appellants,

v.

Bill GRAVES, in his official capacity as Secretary of State of Kansas, Defendant-Appellee.

No. 93-3314.

United States Court of Appeals, Tenth Circuit.

June 7, 1994.

Jay B. Marcus, Fairfield, IA, for plaintiffs-appellants.

Robert T. Stephan, Atty. Gen., David C. Wetzler, Asst. Atty. Gen., Topeka, KS, for defendant-appellee.

Before BALDOCK and McKAY, Circuit Judges, and BROWN,** District Judge.

McKAY, Circuit Judge.

Plaintiffs Dr. John Hagelin for President Committee of Kansas, Dr. John Hagelin, Jessie Nichols, Patricia Robinson, and Wanda Fern Kelly appeal from a summary judgment in favor of defendant Bill Graves, the Secretary of State of Kansas.[1] Plaintiffs Hagelin, Nichols, and Robinson were candidates for national office with the Natural Law Party in 1992, Hagelin for president, Nichols for U.S. senator, Robinson for U.S. representative. Plaintiff Kelly is a registered voter in Kansas who wished to vote for the candidates in the November 1992 general election. Each of the candidates missed the deadline set forth in Kan.Stat.Ann. § 25–305(b) for independent candidates to file nomination petitions. This section requires the filing of nomination petitions by the Monday preceding the primary election, which turns out to be about ninety-one days before the general election.

Plaintiffs argue that Kansas's ballot access laws unfairly discriminate against independent candidates by requiring them to submit their nomination petitions ninety-one days before the general election, while the Republican and Democratic parties can place their presidential candidates on the ballot at any time after such candidates are designated. They also contend that the state's interests do not justify the burdens imposed by its laws. We affirm the decision of the district court.

Kansas provides several methods for candidates to have their names placed on the ballot. Candidates who are members of parties whose candidate for governor polled at least 5% of the total vote cast for all candidates for governor in the preceding general

---

** Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

1. Both parties have waived oral argument. The case is therefore ordered submitted without oral argument.

958

election shall be nominated by primary election. Kan.Stat.Ann. § 25–202(a), (b). Candidates who wish to run in the primary, which is held the first Tuesday in August of even-numbered years, Kan.Stat.Ann. § 25–203(a), are required to file nominating petitions or a declaration of intent to become a candidate by June 10. Kan.Stat.Ann. § 25–205(a). Party nominations made by primary election shall be placed on the general ballot, Kan.Stat.Ann. § 25–301, but no deadline is set forth for submitting these nominations. However, because absentee ballots must be prepared at least twenty days before the election, Kan.Stat.Ann. § 25–1120, arguably parties must submit the names of their nominees before this deadline.

Candidates of parties whose candidate for governor did not poll at least 5% of the total vote cast for all candidates for governor in the last general election may not use the primary nomination process. Kan.Stat.Ann. § 25–202(b). Recognized parties that are not authorized to participate in the primary may nominate candidates by means of a delegate or mass convention or caucus of qualified voters. Kan.Stat.Ann. § 25–302. Certificates of nominations by convention or caucus shall be filed by June 10. Kan.Stat.Ann. § 25–305(a).

A party may seek official recognition by filing a petition sixty days before the deadline for filing nomination papers and declarations of candidacies, Kan.Stat.Ann. § 25–302a, which is approximately April 10. These parties apparently may then nominate candidates pursuant to section 25–302.

Finally, all nominations other than party nominations shall be independent nominations. Kan.Stat.Ann. § 25–303(b). Such nominations may be made by filing petitions signed by at least 5,000 qualified voters, id., by the Monday before the primary election, Kan.Stat.Ann. § 25–305(b).

Major party candidates wishing to run in the Kansas presidential preference primary election, which is held the first Tuesday in April every four years, Kan.Stat.Ann. § 25–4501, must file a declaration of intent or petition by the previous February 12, Kan.Stat.Ann. § 25–4502(b). Party nominations for presidential electors are made by a delegate or mass convention or caucus of qualified electors. Kan.Stat.Ann. § 25–301. No time limit is set for such a convention. The Kansas statutory scheme apparently permits presidential candidates, but no others, to have their names placed on the general election ballot if nominated by their party, even if they did not run in the primary.

Candidates who are unable to have their names placed on the ballot through these means still may participate in the election process as write-in candidates. Such candidates must file an affidavit of write-in candidacy by the second Monday before the general election. Kan.Stat.Ann. § 25–305(c)–(e).

The Natural Law Party was formed April 20, 1992, which was too late to file for recognized party status under section 25–302a that year. It began its effort to obtain the necessary nominating petitions for the candidates in late June 1992. On August 3, 1992, the section 25–305(b) filing deadline for independent candidates, the candidates submitted nomination petitions containing less than the required 5,000 signatures. As a consequence, the Secretary of State rejected the petitions. In the next eight days, the candidates obtained enough additional signatures to meet the signature requirement. The Secretary of State rejected these petitions as untimely. The candidates' names did not appear on the ballot in the general election.

In 1992, the Democratic presidential candidate was nominated on or about July 16, 1992, and the Republican candidate on or about August 19, 1992. Consequently, in 1992, independent candidates were required to file nominating petitions before the Republican presidential nominee was known.

Plaintiffs commenced this 42 U.S.C. § 1983 action, claiming that section 25–305(b) violated their rights under the First and Fourteenth Amendments to the United States Constitution. Each side moved for summary judgment. The district court held the state's interest in voter education was sufficient to justify the burden the filing deadline imposed on plaintiffs' rights, granted the state's motion and denied plaintiffs' motion.

■ We review a grant of summary judgment de novo, applying the same standard as the district court. *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Because the state failed to submit any materials contradicting plaintiffs' statement of facts in support of their motion for summary judgment, these facts are deemed admitted. Consequently, the sole issue is whether the state was entitled to a judgment as a matter of law.

■ While voting is of fundamental constitutional significance, the rights to vote in any manner and to associate for political purposes through the ballot are not absolute. *Burdick v. Takushi*, — U.S. —, —, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992). Rather, the states retain the power to regulate elections, and their election laws invariably will impose some burden on voters. *Id.*

■ The question here is whether the burden imposed is unconstitutional. In making this determination, we must weigh

"the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Id.* (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983)); *see also Rainbow Coalition v. Oklahoma State Election Bd.*, 844 F.2d 740, 743 (10th Cir.1988).

■ When a ballot access law severely restricts First and Fourteenth Amendment rights, it must be " 'narrowly drawn to advance a state interest of compelling importance.' " *Burdick*, — U.S. at —, 112 S.Ct. at 2063 (quoting *Norman v. Reed*, — U.S. —, —, 112 S.Ct. 698, 705, 116 L.Ed.2d 711 (1992)). But when the law imposes only " 'reasonable, nondiscriminatory restrictions' " upon the constitutional rights of voters, " 'the State's important regulatory interests are generally sufficient to justify' " the restrictions. *Id.* at — —, 112 S.Ct. at 2063–64 (quoting *Anderson*, 460 U.S. at 788, 103 S.Ct. at 1569).

■ We begin our analysis by considering the character and magnitude of the alleged constitutional injury. Ballot access restrictions burden two different, though overlapping, rights: the right of individuals to associate to advance their political beliefs, and the right of qualified voters to cast effective votes. *Populist Party v. Herschler*, 746 F.2d 656, 659 (10th Cir.1984). These rights " 'rank among our most precious freedoms.' " *Id.* (quoting *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968)). A filing deadline that falls unequally on independent candidates "impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and—of particular importance—against those voters whose political preferences lie outside the existing political parties." *Anderson*, 460 U.S. at 793–94, 103 S.Ct. at 1572.

*Anderson* indicated that a March filing deadline for independent presidential candidates imposed a substantial burden on voting and associational rights in part because it precluded the emergence of independent candidates who could serve as a focal point for a group of voters who are dissatisfied with the choices within the two major parties. *Id.* at 791, 103 S.Ct. at 1571. We concluded in *Blomquist v. Thomson*, 739 F.2d 525, 528 (10th Cir.1984), that a June 1 deadline for a new political party seeking ballot access directly burdens voting and associational rights because it "prevents a new party from seeking support at a time when such support is most likely to crystallize—after the established political parties have put forth their candidates and platforms." (citing *Anderson*, 460 U.S. at 790–91, 103 S.Ct. at 1571). *See also Rainbow Coalition*, 844 F.2d at 744 (May 31 deadline); *Populist Party*, 746 F.2d at 661 (June 1 deadline).

However, in *Rainbow Coalition*, 844 F.2d at 745–46, we refused to give significant weight to undisputed evidence that minority

parties have difficulty with petition drives until after the major parties' conventions, in light of the Supreme Court's approval of filing deadlines before the major party conventions in *American Party v. White,* 415 U.S. 767, 787 n. 18, 94 S.Ct. 1296, 1309 n. 18, 39 L.Ed.2d 744 (1974), and *Jenness v. Fortson,* 403 U.S. 431, 438, 91 S.Ct. 1970, 1974, 29 L.Ed.2d 554 (1971).

■ We do not interpret our previous decisions or *Anderson* as mandating a holding that a filing deadline for independent candidates which is in line with the deadlines of approximately two-thirds of the states, *see Anderson,* 460 U.S. at 795 n. 20, 103 S.Ct. at 1573 n. 20, imposes a substantial burden on voting and associational rights merely because it fell a few weeks before one major party's convention one year. *Cf. Perry v. Grant,* 775 F.Supp. 821, 829 (M.D.Pa.1991) (noting no constitutional entitlement to gather signatures for nominating papers after nomination of party candidates). There is no evidence in the record as to exactly when the major parties hold their conventions, although they traditionally occur during the summer months. *See Anderson,* 460 U.S. at 800, 103 S.Ct. at 1576. The deadlines in the previous Tenth Circuit cases and *Anderson* undoubtedly fell before the major parties would hold their conventions. For all we know, it was an anomaly in the present case that independents had to file before a major party convention in 1992. In any event, *Rainbow Coalition* made it clear that a filing deadline, at least for nonpresidential candidates, does not impose an unconstitutional burden merely because it falls before the major party conventions.

Nor can we say that the section 25–305(b) deadline falls unequally on independent candidates to their detriment. Plaintiffs argue that section 25–301 is advantageous to major parties because it imposes no time limits on them to submit the names of their presidential nominees. They fail to consider that major party nominees have to file a declaration of intent or qualifying petition by February 12 to run in the presidential preference primary, then survive a primary and a national convention for their names to appear on the ballot. In contrast, a nonparty candidate need only obtain the necessary number of signatures and file a petition in early August for his or her name to appear on the ballot. While an independent candidate can have his or her name placed on the ballot without any public exposure, the same cannot be said for the major party candidates who are subjected to intense public exposure during the party conventions and long before. It cannot be argued that major party candidates face a lighter burden in having their names placed on the ballot.

The section 25–305(b) deadline undoubtedly burdened the candidates' interest in having more time to seek independent ballot status. However, little weight is given to such an interest. *See Burdick,* —— U.S. at ——, 112 S.Ct. at 2065. We agree with the district court that any injury to plaintiffs' constitutional rights is minimal.

We next identify and evaluate the interests asserted in support of the filing deadline, keeping in mind that because the burden on plaintiffs' rights is slight, "the State need not establish a compelling interest to tip the constitutional scales in its direction." *Id.* at ——, 112 S.Ct. at 2066. The state initially asserted five interests: voter education, prevention of fraud, avoidance of voter confusion, prevention of chaos in the party system, and administrative processing. The district court concluded the state had virtually admitted that only voter education could justify the filing deadline. While the state challenges this conclusion, the only interests it asserts on appeal are administrative processing and voter education. We therefore limit our consideration to those interests.

The state has not shown it needs ninety-one days for administrative processing. The Secretary of State and county election officers are required by statute to determine the validity of a nomination petition or declaration of intent within ten days after filing, excluding Saturdays, Sundays, and holidays—or within about fourteen days. Kan. Stat.Ann. § 25–208a. A candidate may object within three days of receiving notice of a finding that a petition or declaration is invalid. Kan.Stat.Ann. § 25–308(b). Such objection shall be considered within five days of the decisionmakers receiving notice of the

objection. Kan.Stat.Ann. § 25–308(d). The ballots must be submitted to the county election officer at least five days before the election. Kan.Stat.Ann. § 25–604(c). Absentee ballots must be prepared no later than twenty days before the general election. Kan.Stat.Ann. § 25–1120.

In addition to these statutory limits, plaintiffs represent that two weeks are needed for typesetting and proofreading, four to five days are needed for printing, and a few weeks are needed for affixing the ballots to ballot machines where they are used. A lesser though unspecified amount of time is needed where ballot machines are not used. Appellants' App. at 24. We conclude that no more than a maximum of approximately seventy-five days are needed for processing ballots.[2]

▮ The remaining time, therefore, must be justified by the state's interest in voter education. Voter education is a legitimate state interest. *Anderson,* 460 U.S. at 796, 103 S.Ct. at 1574. Plaintiffs argue, however, that the filing deadline for independent candidates cannot be justified by the state's interest in voter education because the filing deadline for the primary is only fifty-five days in advance (forty-one days in 1992),[3] and because the state failed to challenge plaintiffs' assertions that 1) the primary voter must work harder to gain information about the primary than the general election; 2) there are more candidates on the primary ballot; and 3) voters in the general election are primarily interested only in candidates for top-of-the-ballot offices.

▮ The state's failure to offer any evidence disputing plaintiffs' evidence that voter education could be accomplished within a shorter period of time is not dispositive. States need not demonstrate they have achieved their interests through the least restrictive means available, *Rainbow Coalition,* 844 F.2d at 743, nor are they required to make a particularized showing of a need for reasonable ballot access restrictions, *Munro v. Socialist Workers Party,* 479 U.S. 189, 194–95, 107 S.Ct. 533, 537, 93 L.Ed.2d 499 (1986).

▮ Viewing Kansas's election scheme in its entirety, as we must, *see Libertarian Party v. Bond,* 764 F.2d 538, 541 (8th Cir. 1985), we conclude it is a reasonable response to the state's interest in voter education. Major party candidates are required to file their nominating petitions approximately fifty-four days earlier than independent candidates, by June 10. Presidential candidates who run in the presidential preference primary must file their nominating papers almost six months in advance of independent candidates. Independent candidates, in contrast, are allowed a "grace period" for filing their nominating petitions until early August. It is reasonable to require major party candidates to file this far in advance of independent candidates because the major party candidates must first educate the public as to their viability as the party's candidate, then survive the primary, a process that " 'functions to winnow out and finally reject all but the chosen candidates.' " *Munro,* 479 U.S. at 196, 107 S.Ct. at 538 (quoting *Storer v. Brown,* 415 U.S. 724, 735, 94 S.Ct. 1274, 1281, 39 L.Ed.2d 714 (1974)).

It is reasonable for Kansas to require, in furtherance of its interest in educating the electorate, that independents make their candidacies official at approximately the same time the major party candidates are chosen, i.e., on or about the date of the primary.[4] At that time the candidates can begin debating, contrasting themselves to other candidates, and submitting themselves to media scrutiny. This conclusion is not altered by the fact that in 1992, independent presidential candidates had to file approximately sixteen days before the Republicans nominated their presidential candidate. The State of Kansas does not control the dates of the major party conven-

---

**2.** While the state argues that it needs ninety-one days to perform the seventeen tasks that must be completed between the primary and general election, it has not identified any specific time limits in addition to those set forth above.

**3.** The June 10 deadline was extended by two weeks for candidates affected by redistricting in 1992.

**4.** Our analysis is not affected by the fact that independents must file one day before the primary.

tions, and may not even know from year to year what those dates will be. As those conventions traditionally occur during the summer months, *see Anderson*, 460 U.S. at 800, 103 S.Ct. at 1576, it was not unreasonable for Kansas to choose a filing date for independent candidates that is around the time all of the candidates will be known.

We conclude the state's interests justify the slight burden section 25–305(b) imposes on plaintiffs' rights. Consequently, we AFFIRM the judgment of the United States District Court for the District of Kansas.