Arlette **BAER; Bernard Raizen; Don Rickey, Jr.; the Citizens Party of the State of Colorado; Paul Grant; Ruth Bennett; and the Libertarian Party of the State of Colorado, Plaintiffs-Appellees,**

v.

Natalie **MEYER, Secretary of State for the State of Colorado, and the State of Colorado, Defendants-Appellants.**

No. 84–1056.

United States Court of Appeals, Tenth Circuit.

March 1, 1984.

Cheryl J. Hanson, Asst. Atty. Gen., Denver, Colo. (Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Denver, Colo., with her on briefs), for defendants-appellants.

Richard M. Borchers, Westminster, Colo. (Wayne E. Stockton and David Miller, American Civil Liberties Union of Colorado, Denver, Colo., with him on briefs), for plaintiffs-appellees.

Before McKAY, LOGAN and SEYMOUR, Circuit Judges.

PER CURIAM.

This action was brought under 42 U.S.C. § 1983 (1976) by the Citizens Party of Colorado and the Libertarian Party of Colorado, together with certain citizens who support the organizational and political objectives of these two parties. The suit asserts that the Colorado statutes governing the organization and ballot access of political parties are unconstitutional because the State's system improperly burdens the availability of political opportunity for these two political organizations and their supporters during Colorado elections. The district court, 577 F.Supp. 838 (D.C.Colo.1984), agreed and enjoined the State from enforcing pertinent provisions of the Colorado Election Code against plaintiffs.

Colorado law defines "political party" as "any political organization which at the last preceding gubernatorial election was represented on the official ballot either by regular party candidates or by individual nominees only if it cast for its gubernatorial candidate at least ten percent of the total gubernatorial vote cast in the state at such election." Colo.Rev.Stat. § 1–1–104(18) (1980). A "political organization" is "any group of qualified electors who, by petition for nomination of an independent candidate as provided in section 1–4–801, places upon the official general election ballot nominees for public office." Id. § 1–1–104(17) (1980). Currently the Republican Party and the Democratic Party are the only "political parties" in Colorado.

Plaintiffs allege that the State system creates unfair or unnecessary burdens on minority political associations in three respects. First, plaintiffs claim that the en-

forcement of section 1–4–801(a) of the Colorado Election Code, Colo.Rev.Stat. § 1–4–801(a) (1980) [1], operates to unfairly prevent the supporters of plaintiff organizations from knowing who their endorsed candidates are and from promoting their minor party interests. Under the statutory scheme, only political parties as defined by State law can prevent unendorsed candidates from running under the party name. Because plaintiff organizations have not obtained this status, unendorsed candidates may designate themselves as representing the Citizens Party or the Libertarian Party, thereby diluting the voting strength of the plaintiff parties. Second, plaintiffs claim that defendants have unreasonably burdened the ability of plaintiffs' supporters to note their support of the Citizens and Libertarian parties on their voter registration forms. Colorado permits registrants to indicate on their registration form their party affiliation only if the affiliation is with a political party as defined by State law. Otherwise the elector must register as "unaffiliated" under section 1–2–203(2)(j) of the Colorado Election Code.[2] This practice denies plaintiff organizations the opportunities made available to the major parties to acquire from or through the Secretary of State specific information about party support for purposes of campaigning and political organization. The third claim raises the inability of persons supporting political organizations other than those meeting the Colorado definition of political party to have their own poll watchers present during the elections.

The root of plaintiffs' complaint is the structure of the Colorado statute, which distinguishes between political parties and political organizations. *See* Colo.Rev.Stat. § 1–1–104(17)–(18) (1980). That structure results in discrimination between those supporting the existing majority parties, Democratic and Republican, and those supporting the plaintiffs Citizens and Libertarian parties.

Ballot access cases are never simple. Electoral schemes vary widely from state to state, and thus no prior factual setting provides a litmus for determining whether a particular scheme violates constitutional standards when dealing with the life blood of representative government—the voting process. However, the Supreme Court has summarized the fundamental inquiry with which we must begin in ballot access cases. In *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), the Court said:

> "Our ballot access cases ... focus on the degree to which the challenged restrictions operate as a mechanism to exclude certain classes of candidates from the electoral process. The inquiry is whether the challenged restriction unfairly or unnecessarily burdens 'the availability of political opportunity.'" *Clements v.*

---

1. Section 1–4–801(a) of the Colorado Election Code provides:

    1–4–801. *Petitions for nominating independent candidates.* (1) Candidates for public offices to be filled at a general or congressional vacancy election *who do not wish to affiliate with a political party* may be nominated, other than by a primary election or a convention, in the following manner:

    (a) A petition for nominating independent candidates shall be prepared which shall contain the names and addresses of any candidates for the offices to be filled. The petition shall designate in not more than three words the political or other name which the signers select. No name of any political party shall be used, in whole or in part, for this purpose. Any such petition for a candidate for governor shall also include a candidate for lieutenant governor, and together they shall be considered joint candidates at the general elec-

    tion. In the case of nominations for electors of president and vice president of the United States, the names of the candidates for president and vice president may be added to the political or other name designated on the petition.

    Colo.Rev.Stat. § 1–4–801(a) (1980) (emphasis supplied).

2. Section 1–2–203(2)(j) provides in part:

    (2) In addition, each qualified elector shall be asked, and said elector shall correctly answer, the following:

    \* \* \* \* \* \*

    (j) The elector's party affiliation, if any, if the qualified elector desires to affiliate with any political party. If this question is not answered, the elector shall be registered as "unaffiliated".

    *Id.*

*Fashing,* 457 U.S. 957, 964 [102 S.Ct. 2836, 2844, 73 L.Ed.2d 508] (1982) (plurality opinion), quoting *Lubin v. Panish, supra,* 415 U.S. [709] at 716 [94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974)].

*Id.* 103 S.Ct. at 1572 (footnote omitted).

In considering detailed challenges to state regulatory processes, we must give due regard to the state's duty to provide "substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). At the same time we must bear in mind that "[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 534, 11 L.Ed.2d 481 (1964). The watchwords in balancing the state's interest against the interest of the citizen are whether the means adopted "unfairly or unnecessarily" burden the citizens' political opportunity. *Anderson v. Celebrezze,* 103 S.Ct. at 1572. Thus, the issue before us is whether Colorado's ballot access system unfairly or unnecessarily burdens its citizens' access to political opportunity.

### I. *Party Designation and Name Protection.*

Plaintiffs do not argue that the Colorado election laws unconstitutionally impede their candidates' actual access to the ballot. The procedure for placing a candidate who is not affiliated with a political party on the general election ballot in Colorado is less onerous than the Georgia procedure the Supreme Court upheld in *Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). Plaintiffs focus their attack by arguing that only political parties are entitled to name protection on the general election ballot, and that therefore any candidate who gets on the general election ballot by petition may choose the description "Libertarian Party," regardless of his or her relationship to the Libertarian Party

of Colorado. The district court held the Colorado election scheme unconstitutional based in part on its findings that an unauthorized candidate can dilute the strength of minority parties by using their name.

The principles of American jurisprudence caution us not to decide a constitutional issue if a proper construction of a statute or an interpretation of existing case law could be controlling. *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 346–48, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). Plaintiffs' challenge to the lack of name protection and party designation on the ballot does not require us to reach the merits of the constitutional argument because Colorado's Secretary of State has not followed the established legal principles of that State. Thus, we may dispose of this issue by properly construing existing Colorado law, and need not decide the federal constitutional question raised.

In construing a substantially identical predecessor section of the Colorado Code, the Supreme Court of Colorado held:

> that where a party is organized, although it may not have sufficient strength to make nominations by convention, it is entitled to have whatever proceedings it may take with reference to making nominations protected in the same way that nominations by convention are . . . .

*McBroom v. Brown,* 53 Colo. 412, 127 P. 957, 958 (1912) (citing *Phillips v. Smith,* 25 Colo. 456, 55 P. 184 (Colo.1898)). If this clear mandate of the Colorado Supreme Court were being followed, this issue would not currently be before us. We understand from the record and from oral argument that existing Colorado law was not followed on advice from the Attorney General of the State. However, we find no basis in law for concluding that the Colorado Supreme Court's decision in *McBroom* is not binding on the Secretary of State today.

Based on the unambiguous articulation of Colorado law in *McBroom,* we affirm the trial court's injunction which allows plaintiffs to receive the same name protection accorded those groups that have achieved

the status of "political parties." Thus, we find it unnecessary to consider whether the provision as heretofore enforced by the Secretary of State would violate constitutional standards.

## II. *Voter Registration Forms.*

■ The gravamen of plaintiffs' complaint and the trial court's findings on the issue of voter registration forms is that under today's political realities, access to minimal information about political party affiliation is the key to successful political organization and campaigning. The advent of computers has made it possible for persons seeking particularized support to use these party designations as ways of targeting and specializing campaign efforts. Admirably, Colorado makes the voter registration list available to all candidates seeking such information. The difficulty is that under current practice, the application of section 1–2–203(2)(j) of the Colorado Election Code, has, according to the findings of the trial court, prevented persons other than those affiliated with the two major political parties from obtaining and using such information in a manner similar to that of the major parties.

The electors of the Democrats and Republicans can designate their party affiliation by name on the voter registration form. Plaintiffs are required to register as "unaffiliated." Thus, while the Citizens and Libertarian parties are permitted the same access to voter registration lists, they are unable to determine from the welter of "unaffiliateds" which of those unaffiliated voters are in fact supporters of their political organizations. As noted by the United States Supreme Court:

A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and—of particular importance—against those voters whose political preferences lie outside the existing political parties. By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity and competition in the marketplace of ideas.

*Anderson v. Celebrezze,* 103 S.Ct. at 1572 (citations omitted). The record reflects that the burden on the Secretary of State to permit and include in the computerized record a citizen's designation of its affiliation with either of the two plaintiff parties would be merely nominal. All that is required to accomplish this objective is to inform voters that they can indicate their support for these parties on the registration form, and to include in the computer an additional letter "C" and an additional letter "L." We believe the trial court correctly concluded that in light of this nominal effort, the refusal to permit such designation unnecessarily burdens the opportunity of the citizen and his party to promote their minority interests.

The State has argued that if required to permit the additional designations it would be faced with the impossible task of sorting out the purely frivolous and insubstantial attempts to designate party affiliation on the registration form. The State certainly has a substantial interest in regulating and preventing such burdens in the conduct of elections. However, the Supreme Court of Colorado in *McBroom* has already provided a water mark which if followed prevents this burdensome result. *See McBroom v. Brown,* 53 Colo. 412, 127 P. at 958. The Secretary of State need only permit such party designation in registering if a political organization already exists in the State under its name, has recognized officials, and has previously placed a candidate on the ballot by petition. As the Supreme Court has held, "it is especially difficult for the state to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status." *Anderson,* 103 S.Ct. at 1572.

The State has broad latitude in controlling frivolous party registration of tiny fractional interests, *Storer v. Brown,* 415 U.S. 724, 736, 94 S.Ct. 1274, 1282, 39 L.Ed.2d

714 (1974); *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971). However, we believe the record amply supports the claim of plaintiffs here that they are qualified as organizations entitled to designation on the voter registration forms because they have previously managed to get candidates supporting their organization on the ballots in Colorado. We are satisfied that the trial court had before it sufficient evidence to support its finding that these two parties and their supporters were unnecessarily and unfairly burdened by the State's refusal to permit them to designate their support on registration forms and to include that designation in the computer information made available to citizens without discrimination.

We are not at liberty to set out the specifics and details of what the State may do in regulating this important interest. Moreover, we carefully do not conclude that the Secretary of State must recognize any political organizations other than the two which were before the court in this case. Indeed, the record fairly reflects that no other political organizations have managed to field candidates in recent elections and thereby demonstrate that they are indeed political organizations as recognized in *McBroom.* This opinion is limited to those instances in which political organizations have succeeded in fielding candidates by the petition process so as to demonstrate some modicum of political organization and support.

### III. *Poll Watchers.*

▮ While it would be desirable for each candidate to have persons looking out for his interests at the poll, we are not persuaded that this interest is a vital one for constitutional access to the voting process. Poll watchers from competing political parties, the Democrats and Republicans, are already available at the ballot place to insure against tampering with the voting process. While it is theoretically possible that those two interests could "gang up" on minority party interests, this possibility is sufficiently unlikely that it does not overcome the burden placed on the State to provide poll watchers for each political organization in addition to those for the parties that qualify as political parties under the State scheme.

### IV. *Conclusion.*

The trial court's order and judgment was framed in general terms. Facially it would appear to require the State to permit political organizations to be treated in all respects as political parties. However, a careful reading of the trial court's opinion leads us to believe that its intent was more narrowly focused. In any event, to the extent that it could be construed more broadly than our holding in this opinion, we disapprove it. Thus, we affirm the trial court's decision insofar as it requires the Secretary of State to conform to the holding of *McBroom* and to permit supporters of the Citizens and Libertarian parties to designate that support on their registration forms beginning from the date of this judgment forward.

We also affirm that part of the trial court's decision ordering defendants to pay the costs of this action and plaintiffs' reasonable attorneys' fees. We reverse the trial court's opinion to the extent that it would require the designation of poll watchers for political organizations, including plaintiffs herein, or to grant other relief.

In view of the shortness of time intervening between now and the election in this general election year, this case is remanded immediately with directions to the trial court to forthwith enter an order in conformity with the judgment of this court. After disposing of the *McBroom* issue and the voter affiliation issue, the district court may retain jurisdiction to determine attorneys' fees. It is further ordered that the mandate shall issue forthwith.