RAINBOW COALITION OF OKLA-HOMA; Floyd Turner, Chairman of the Rainbow Coalition of Oklahoma; Libertarian Party of Oklahoma; Charles Burris, Chairman of the Libertarian Party of Oklahoma; Populist Party of Oklahoma, Inc., an Oklahoma nonprofit corporation; and Bill Chandler, Chairman of the Populist Party of Oklahoma, Plaintiffs,

v.

The OKLAHOMA STATE ELECTION BOARD; Betty McElderry, Chairman of the Oklahoma State Election Board; Angela Ables, Vice Chairman of the Oklahoma State Election Board; Mona Lambird, Member of the Oklahoma State Election Board, and Lee Slater, Secretary of the Oklahoma State Election Board, Defendants.

No. CIV–86–0364–T.

United States District Court,
W.D. Oklahoma.

Aug. 25, 1987.

James C. Linger, Butler & Linger, Tulsa, Okl., Loren L. Baker, Oklahoma City, Okl., for plaintiffs.

Thomas L. Spencer, Asst. Atty. Gen., Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION AND ORDER

RALPH G. THOMPSON, Chief Judge.

Before the Court for consideration are two Motions for Summary Judgment, one filed by plaintiffs on July 31, 1986, and one filed by the defendants on August 15, 1986.[1]

Plaintiffs are the Rainbow Coalition of Oklahoma ("Rainbow Coalition") and its chair, Floyd Turner ("Turner"), the Libertarian Party of Oklahoma ("Libertarian Party") and its chair, Charles Burris ("Burris"), and the Populist Party of Oklahoma, Inc. ("Populist Party") and its chair, Bill Chandler ("Chandler"). Defendants in-

---

1. On March 12, 1987, without leave of Court and over the objection of the defendants, plaintiffs filed a supplemental brief to bring to the attention of the Court a newspaper article which purportedly contradicted testimony in an affidavit submitted by defendants. The Court did not consider the newspaper article in reaching its decision herein.

clude the Oklahoma State Election Board ("OSEB"), its officers and members.

Plaintiffs filed this action February 18, 1986, pursuant to 42 U.S.C. § 1983, 28 U.S.C. §§ 1343(3), 1343(4), 2201 and 2202, seeking a declaratory judgment that Oklahoma's ballot access laws [2] and voter registration laws,[3] as applied to them, violate their rights under the first and fourteenth amendments to the United States Constitution. In addition, plaintiffs seek a permanent injunction prohibiting OSEB from enforcing those laws against them.

## I. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

In order to form a recognized political party in Oklahoma, a group must file a petition by May 31 of an even-numbered year, bearing signatures of registered voters equal to at least 5% of the total votes cast in the last general election either for governor or for electors for president.[4] Okla.Stat. tit. 26, § 1–108. Application of the 5% petition signature requirement results in a higher number of signatures being required in gubernatorial election years than in presidential election years.[5] This is so because in gubernatorial election years, the petition must bear the signatures of 5% of the total votes cast in the preceding presidential election and historically, in Oklahoma, more people vote in presidential elections than in gubernatorial elections.

In Oklahoma a voter may register only as a member of a recognized political party or as an Independent.[6] Okla.Stat. tit. 26, § 4–112. Further, if a recognized political party fails to receive at least 10% of the votes cast, that party ceases to exist and its members are automatically changed to "Independent" on voter registration lists.[7] Okla.Stat. tit. 26, § 1–110.

As to the ballot access restrictions at Okla.Stat. tit. 26, § 1–108, plaintiffs contend, first, that the application of the 5% petition signature requirement is unconstitutional because it requires more signatures in gubernatorial election years than in presidential election years and thus discriminates against political parties attempting to form in gubernatorial election years; and second, that the May 31 deadline for filing the petition is unconstitutional because it is too far removed from the primary and general elections in Oklahoma.[8] As to the voter registration restrictions at Okla.Stat. tit. 26, §§ 1–110 and 4–112, plaintiffs contend the statutes are unconstitutional because they prevent plaintiffs and other citizens of Oklahoma from registering to vote as members of unrecognized political parties.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants contend, first, that Rainbow Coalition and Turner have no standing to challenge Oklahoma's ballot access laws or voter registration laws because they are

---

2. Okla.Stat. tit. 26, § 1–108 (1981 & Supp.1985).

3. Okla.Stat. tit. 26, § 1–110 (1981 & Supp.1974) and Okla.Stat. tit. 26, § 4–112 (1981 & Supp. 1976).

4. The Governor of Oklahoma, like the President of the United States, serves a four-year term. Gubernatorial elections and presidential elections are held in alternate, even-numbered years.

5. In the last three gubernatorial election years the number of signatures required was: 54,613 (1978); 57,485 (1982); 62,784 (1986). In the last three presidential election years the number of signatures required was: 40,242 (1976); 38,-870 (1980); 44,157 (1984). In 1988 the required number of signatures will be 45,497.

6. Presently, the only recognized political parties in Oklahoma are the Democratic Party and the Republican Party.

7. In 1980 the Libertarian Party obtained recognition as a political party through the petition process but failed to receive 10% of the votes cast. In 1984 the Libertarian Party obtained recognition as a political party as a result of court order, *Libertarian Party of Oklahoma v. Oklahoma State Election Board*, 593 F.Supp. 118 (W.D.Okla.1984), but again failed to receive 10% of the votes cast.

8. In 1988 the primary election date is August 23 and the general election date is November 8. Thus, the May 31 deadline is 84 days before the primary and 161 days before the general election.

not attempting to form a recognized political party; second, that Populist Party and Chandler may not relitigate their challenge to Okla.Stat. tit. 26, § 1–108 because their previous challenge to this statute was litigated unsuccessfully in 1984;[9] and third, that Libertarian Party and Burris may not relitigate their challenges to Okla.Stat. tit. 26, §§ 1–108, 1–110, and 4–112 because their previous challenges to those statutes were litigated unsuccessfully in 1982.[10] Defendants also assert Oklahoma's ballot access laws and voter registration laws are constitutionally valid.

### III. STANDING

Defendants contend Rainbow Coalition and Turner do not have standing to maintain this action. They point out that Rainbow Coalition is not presently attempting to form a new political party, and that neither the Rainbow Coalition's members nor its chair, Turner, are seeking to register to vote as members of the Rainbow Coalition "party." The undisputed purposes of the Rainbow Coalition are to urge Reverend Jesse Jackson to run as a third-party candidate for U.S. President in the 1988 Oklahoma election, and to support candidates who advocate political views which are favorable to minorities. Rainbow Coalition would support candidates from any party if the candidates supported political views of minorities.

Rainbow Coalition and Turner have standing only if they themselves have suffered "some actual or threatened injury" as a result of the ballot access and voter registration restrictions so as to meet the article III requirement that there be a justiciable "case or controversy." *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

In view of the undisputed status and purposes of Rainbow Coalition, as above described, and the requirements of law, as explained, Rainbow Coalition and Turner have not suffered any actual or threatened injury and, therefore, they lack standing to bring the instant challenge as a matter of law.[11]

### IV. POPULIST PARTY AND CHANDLER

Both the Populist Party and Chandler were plaintiffs in *Populist Party of Oklahoma v. Slater,* CIV–84–2316–E (W.D. Okla.1984), involving a challenge to Okla. Stat. tit. 26, § 1–108. Defendants in the instant case contend the doctrine of res judicata bars the Populist Party and Chandler from bringing the instant challenges. However, the Order dismissing the action in 1984 was amended in 1987 to reflect that the dismissal was not an adjudication on the merits and therefore does not affect the instant action.

### V. LIBERTARIAN PARTY AND BURRIS

Defendants contend the Libertarian Party and Burris are barred by the doctrine of res judicata from challenging Okla. Stat. tit. 26, §§ 1–108, 1–110 and 4–112 since other members of the Libertarian Party challenged these statutes unsuccessfully in *Arutunoff v. Oklahoma State Election Board,* 687 F.2d 1375 (10th Cir. 1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1892, 77 L.Ed.2d 282 (1983). The Court is not convinced the facts, circumstances and issues in the instant case are sufficiently similar to those in *Arutunoff* so as to apply the doctrine of res judicata.[12] In *Arutunoff,* eleven individual plaintiffs challenged the Oklahoma statutes which provide that unless a party receives 10% of the votes

9. *Populist Party of Oklahoma v. Slater,* CIV–84–2316–E (W.D.Okla.1984) (dismissed October 11, 1984).

10. *Arutunoff v. Oklahoma State Election Board,* 687 F.2d 1375 (10th Cir.1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1892, 77 L.Ed.2d 282 (1983).

11. Realizing the importance to the parties of the subject matter in issue and the need to provide a

decision without further delay, the Court elects to proceed to the merits of the issues raised by the other plaintiffs, whose standing was not challenged, even though their actual or threatened injury appears to be minimal.

12. Because it is unnecessary to do so, the Court does not reach the issue of privity between the plaintiffs herein and the plaintiffs in *Arutunoff.*

cast, it ceases to exist and its members are automatically changed to "Independents" on the voter registration lists. Okla.Stat. tit. 26, § 1–109, 1–110.[13] The 5% petition signature requirement, the May 31 deadline for filing petitions, and the restriction on voter registration at Okla.Stat. tit. 26, § 4–112 were not at issue. The Court in *Arutunoff* did acknowledge approval of the 5% petition signature requirement in dicta, and did hold that changing voter registration of defunct parties to Independent was "not unconstitutional, per se." *Arutunoff* at 1379. But, as stated above, the facts, circumstances and issues in the instant case are different than those in *Arutunoff,* and therefore the Libertarian Party and Burris are not barred by the doctrine of res judicata.

## VI. BALLOT ACCESS

■ Restrictions upon access of new political parties to the ballot impinge upon individual rights to associate for political purposes and to vote effectively, and may not survive scrutiny under the first and fourteenth amendments. *Munro v. Socialist Workers Party,* 479 U.S. 189, ——, 107 S.Ct. 533, 536, 93 L.Ed.2d 499 (1986). For example, Ohio election laws, which made it virtually impossible for a new political party to be placed on the ballot even if the party had hundreds of thousands of adherents, was held unconstitutional in *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed. 2d 24 (1968). "These associational rights, however, are not absolute and are necessarily subject to qualification if elections are to be run fairly and effectively." *Munro,* 479 U.S. at ——, 107 S.Ct. at 536–37 (citing *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974)). The Supreme Court has recognized and emphasized that states have important interests in protecting the integrity of their political processes from frivolous or fraudulent candidacies, in ensuring that their election processes are efficient, in avoiding voter confusion caused by an overcrowded ballot, and in avoiding the expense and

burden of runoff elections. *Clements v. Fashing,* 457 U.S. 957, 965, 102 S.Ct. 2836, 2844, 73 L.Ed.2d 508 (1982) (citations omitted). While there is not a "litmus-paper test" for deciding cases like this, *Storer v. Brown, supra,* it is clear that states may condition access to the general election ballot upon a showing of a modicum of support among the potential voters. *Munro, supra,* 479 U.S. at ——, 107 S.Ct. at 537; *Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). The Supreme Court has repeatedly upheld reasonable "modicum of support" requirements and classifications that turn on the political party's success in prior elections. *See Munro v. Socialist Workers Party, supra; Clements v. Fashing, supra; Storer v. Brown, supra; American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); *Jenness v. Fortson, supra.*

## VII. THE 5% PETITION SIGNATURE REQUIREMENT

Both the United States Supreme Court and the Tenth Circuit Court of Appeals have upheld election laws restricting ballot access to those who file petitions with signatures representing 5% of the voters. *Jenness v. Fortson, supra; Arutunoff, supra,* at 1379 (dicta); *Populist Party v. Herschler,* 746 F.2d 656, 660 (10th Cir. 1984). Plaintiffs in the instant case attempt to distinguish their challenge from cases upholding the 5% petition signature requirement by focusing on the unequal result of the application of the 5% requirement. It is true that the application of the 5% petition signature requirement has, in the past, resulted in a higher number of signatures required in gubernatorial election years than in presidential election years. ·See note 5, *supra.* However, it does not necessarily follow that the statute is unconstitutional. A 5% petition signature requirement. has been upheld. *Jenness, supra; Arutunoff, supra; Herschler, supra.* Further, as applied, it does not make it "virtually impossible" for a

---

**13.** Also at issue in *Arutunoff* were Okla.Stat. tit. 26, §§ 5–112 and 10–101.1 relating to independ-

dent candidates for office.

new political party to gain access to the ballot since the Libertarian Party, in 1980, was successful in its petition bid to gain access to the ballot in Oklahoma, when the laws were even more restrictive.[14] Finally, new parties are free to choose which year to attempt their petition drive, and may choose, if they wish, presidential election years.

■ Therefore, the Court holds the 5% petition signature requirement at Okla. Stat. tit. 26, § 1–108 is constitutional as applied.

## VIII.  THE MAY 31 DEADLINE

The Oklahoma legislature chose May 31 of the election year as the deadline for filing petitions to form a new party in Oklahoma.  Using the 1986 election year for illustrative purposes, the deadline was only 36 days before the candidate filing period for candidates of new and old political parties, which was July 7–9.  During that time the election boards count and verify the petition signatures, which may take from two weeks to thirty days.  If the petitions are sufficient, the party is then recognized and its candidates may file for offices.  After the candidates have filed, challenges to qualifications are heard and decided.  The challenges were not finally decided until August 4, 1986.  After the slate of candidates is finalized but before the party primary elections, ballots are printed, absentee ballots are mailed and returned, and campaigns are conducted. After the results of the primary elections are certified, on August 29, the cycle is repeated, including contesting the results, hearing and deciding those contests, printing ballots, mailing absentee ballots and receiving them by the runoff election date of September 16.[15]  After certifying the results of the runoff elections, on September 19, the cycle is again repeated prior to the general election on November 4.

While recognizing that the May 31 deadline may be troublesomely early for some new parties, the Court does not find the deadline to be so restrictive as to reach constitutional dimension, particularly in view of the fact that since 1985 new parties have a full year within which to circulate their petitions, and in view of the fact that the Libertarian Party was able to meet the May 31 deadline in its successful 1980 petition bid, when it had only ninety days to circulate its petitions.

While the Tenth Circuit criticized Wyoming's June 1 deadline in *Blomquist v. Thomson,* 739 F.2d 525 (10th Cir.1984) and in *Populist Party v. Herschler,* 746 F.2d 656 (10th Cir.1984), the Court did not reach the merits of the June 1 deadline in either case.[16]  In *Blomquist* the Court held Wyoming's requirement that new parties gather 8,000 signatures by June 1 was unconstitutional as applied to the 1984 election because, as applied in 1984, it drastically reduced the time available to gather signatures from the one-year period normally provided, to two months.[17]  The Court did not reach the issue of whether the June 1 deadline would be valid when plaintiffs had the full year to obtain signatures, but rather stated that even if the Court were to assume that the state's reasons for choosing the June 1 deadline would be sufficient "under ordinary circumstances," the reasons were not sufficient as applied to the 1984 election.  *Blomquist* at 529.

In *Herschler, supra,* the Tenth Circuit denied plaintiffs' application for an injunction pending appeal from the district court's denial of a temporary restraining order, because "[p]laintiffs have failed to

---

14. In 1985 the Oklahoma legislature amended Okla.Stat. tit. 26, § 1–108 to extend the time for circulating petitions from ninety days to one year.  Okla.Sess.Laws ch. 269, § 1, p. 1158.

15. Runoff elections are held in races where no candidate obtains a simple majority in the primaries.

16. North Dakota's June 1 deadline was held unconstitutional in *McLain v. Meier,* 637 F.2d

1159 (8th Cir.1980).  To the extent *McLain* differs from the opinion herein, this Court declines to follow *McLain.*

17. Another basis for the holding was the state's illogical argument that it had a compelling interest in requiring 8,000 signatures while at the same time the state had agreed to require only 1,333 signatures for the 1984 election year.

show a substantial likelihood of success on the merits in the challenge to the signature and deadline requirements of the Wyoming statutes...." *Herschler* at 661. The plaintiffs had filed their petition over three months after the June 1 deadline and had submitted only 1,562 signatures.

In the instant case the plaintiffs admit that in their 1985–86 petition drive, the Libertarian Party did not "turn in" their petitions and they do not know how many signatures they obtained because no formal count was performed but they "probably" got less than 5,000 signatures.

■ For the reasons stated, the Court holds that Oklahoma's May 31 deadline, though troublesomely early, is not constitutionally infirm as applied to the plaintiffs herein.

## IX. VOTER REGISTRATION

In Oklahoma, a voter may register only as a member of a recognized political party or as an Independent. Okla.Stat. tit. 26, § 4–112. Both the Supreme Court and the Tenth Circuit Court have recognized that the state has broad latitude in controlling frivolous party registration of tiny fractional interests. *Baer v. Meyer,* 728 F.2d 471, 475 (10th Cir.1984); *Storer v. Brown,* 415 U.S. 724, 736, 94 S.Ct. 1274, 1282, 39 L.Ed. 2d 714 (1974); *Jenness v. Forston,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971).

In *Baer v. Meyer, supra,* the plaintiffs challenged, *inter alia,* Colorado's voter registration statute which permitted registrants to indicate their party affiliation only if their party was a recognized political party in the state (the Democratic Party and Republican Party were the only recognized political parties in Colorado); otherwise the voter had to register as "unaffiliated." The Court recognized the state's substantial interest in regulating voter registration and preventing "purely frivolous and insubstantial attempts to designate party affiliation on the registration form." *Baer* at 475. However, because the administrative burden to permit and include a citizen's designation of affiliation with either of the two plaintiff parties was merely nominal,[18] and because the Colorado Supreme Court had already provided a watermark to prevent the Secretary of State from having to permit frivolous and insubstantial party registration,[19] the Court held that the two parties and their members were unnecessarily and unfairly burdened by the state's refusal to permit them to designate their affiliation on their registration forms.[20]

In the instant case the administrative burden is far from nominal. Only 3 of Oklahoma's 77 counties maintain their voter registration lists on computers; the other 74 counties maintain their lists manually. It is undisputed that unlimited party registration would increase the burden on state and county election boards to segregate voters into separate categories for a potentially unlimited number of parties, rather than the three categories presently used: Democrat, Republican, and Independent. There could be confusion surrounding party names that were similar to each other. Registrars would need additional training in dealing with an unlimited number of parties, many with potentially similar names.

In permitting voters to register only as members of recognized political parties or as Independent, Oklahoma does not prohibit its citizens from registering to vote, and does not prohibit registered voters from voting for candidates of their choice. The state simply chose this method to control frivolous and insubstantial party registra-

---

**18.** The record reflected that all that would be necessary would be to inform voters they could indicate their support for these parties, and to include in the computer the additional letters "C" and "L" (for Citizens Party and Libertarian Party, respectively).

**19.** *McBroom v. Brown,* 53 Colo. 412, 127 P. 957 (1912).

**20.** The Court expressly limited its opinion to the two parties which were plaintiffs in the case and to those instances in which political organizations succeeded in fielding candidates by the petition process so as to demonstrate some modicum of political organization and support.

tion. Oklahoma's companion voter registration statute [21] was upheld in *Arutunoff v. Oklahoma State Election Board*, 687 F.2d 1375 (10th Cir.1982), *cert. denied*, 461 U.S. 913, 103 S.Ct. 1892, 77 L.Ed.2d 282 (1983), wherein the Court stated: "Once a recognized political party ceased to exist, it would follow that its members can no longer be carried on the voter rolls as registered members of such defunct party." *Id.* at 1379.

■ Thus, in view of the state's broad latitude in such areas, its substantial interests involved, the undisputed evidence of the increased burden that would be imposed by unlimited party registration, and the Tenth Circuit's holding in *Arutunoff, supra,* the Court holds that Oklahoma's restriction on voter registration is constitutional as applied.

## X.  CONCLUSION

For the reasons stated, the Court DENIES plaintiffs' Motion for Summary Judgment, DENIES defendants' motion for summary judgment in part, and GRANTS defendants' motion for summary judgment in part. Thus, the challenged election laws, Okla.Stat. tit. 26, §§ 1–108, 1–110, and 4–112, are constitutional as applied to the plaintiffs herein. The restrictions upon access to the ballot and the restrictions on voter registration serve compelling state interests without unnecessarily or unduly burdening the plaintiffs' rights to associate for political purposes or to vote effectively.