**IOWA SOCIALIST PARTY, and William Ross Douglas, Appellants,**

v.

**Dale L. NELSON, State Registrar of Voters, Elisabeth Buck, Rhonda Nemke, and Paulee Lipsman, State Voter Registration Commission, and Elaine Baxter, State Commissioner of Elections, Appellees.**

No. 89–1703SI.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1990.

Decided July 27, 1990.

**1176**

Connie A. Newlin, Des Moines, Iowa, for appellants.

Julie F. Pottorff, Des Moines, Iowa, for appellees.

Before JOHN R. GIBSON, WOLLMAN and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

The Iowa Socialist party and William Ross Douglas, an active member thereof (hereinafter collectively referred to as "ISP"), appeal the district court's [1] entry of judgment in favor of various Iowa state officials. ISP brought suit under 42 U.S.C. § 1983, seeking a declaratory judgment that certain Iowa voter registration procedures were unconstitutional, and an injunction prohibiting state officials from utilizing voter registration forms that do not allow registrants to indicate a preference for or affiliation with ISP.[2] The district court concluded that the voter registration procedures serve a rational state interest, do not unfairly or unnecessarily burden ISP, are not so onerous as to freeze the political status quo or chill voters' interest in alternative party affiliation or membership, and do not deny equal protection of the law. On appeal, ISP does not challenge the state requirement that to become a "party," its candidates must poll at least two percent of the total vote cast for president or governor in the most recent general election. Instead, ISP challenges the requirement that only a political party, as so defined, may have its name placed on the voter registration form. Because we hold that the challenged Iowa voter registration provisions do not unfairly or unnecessarily burden the availability of political opportunity, we affirm.

I.

The facts of this case are undisputed. ISP, which claims sixty-three identifiable members statewide, was founded in 1900 but did not place a candidate on the ballot until 1976. ISP applied for and was grant-

---

1. The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

2. ISP also requested an award of attorney fees pursuant to 42 U.S.C. § 1988.

ed a state charter in 1977. ISP placed candidates for nonpartisan city council positions on the ballot in 1979, 1983, 1985 and 1987, and has occasionally run candidates for both president and governor. However, no ISP candidate has ever polled even as much as one-third of one percent (.3%) of the total vote cast in Iowa for president or governor. ISP's showing at the polls in 1988 was even more dismal. In that year, ISP placed a candidate for president on the general election ballot. The ISP candidate polled only 334 votes out of 1,225,614 cast for president and vice president. This represents less than three-hundredths of one percent (.03%) of all votes cast. Finally, in the two previous statewide election years, 1984 and 1986, ISP failed to place a candidate for president or governor on the ballot.

Because of ISP's inability to poll at least two percent of the total votes cast for president or governor, the party does not qualify as a "political party" under Iowa Code § 43.2. That section provides:

> The term 'political party' shall mean a party which, at the last preceding general election, cast for its candidate for president of the United States or for governor, as the case may be, at least two percent of the total vote cast for all candidates for that office at that election.

*Id.* One consequence of the denial of political party status to ISP is that the organization cannot have its name placed on the voter registration form on which persons registering to vote can identify their preference for or affiliation with a particular political party. *See* Iowa Code § 48.6.[3]

Iowa collects information concerning party affiliation from the voter registration forms and turns the data over to qualifying parties. The information is designed to assist the parties in running their primary elections. Because the primaries are closed, only voters who have expressed a preference for a particular party may vote in its primary. Organizations such as ISP which do not qualify as political parties nominate their candidates by caucus or con-

vention, not by primary. Currently, only the Democratic and Republican parties qualify.

Seventeen other minor political organizations have placed candidates on the ballot for the offices of president, vice president or governor from 1968–1986. Although none of these candidates has gained over two percent of the total vote cast, many of them have consistently outpolled ISP. For example, in 1976, the Communist, Socialist Workers, American, Libertarian, and U.S. Labor candidates each polled more votes; in 1978, the Libertarian candidate polled more votes; in 1980, the Libertarian and Citizens candidates polled more votes; and in 1982, the Libertarian candidate polled more votes.

It would cost the State of Iowa $45,200 to modify the current voter registration system and computer programs to add ISP to the voter registration form. Thirty-five counties which do not purchase data processing services from the State of Iowa for voter registration would also be forced to incur additional costs. If additional political organizations subsequently obtain political party status, Iowa will incur additional expenses in modifying its registration forms. However, if the current computer programs are modified, these future increased costs, while real, will not be significant.

## II.

■ In considering ISP's challenge to Iowa's voter registration procedures, we must first identify the appropriate standard of review. In our most recent decision reviewing a state's restriction on a political organization's access to the ballot, we applied strict scrutiny. *Manifold v. Blunt*, 863 F.2d 1368, 1372–73 (8th Cir. 1988), *cert. denied,* — U.S. ——, 110 S.Ct. 242, 107 L.Ed.2d 192 (1989). However, we recognized that "[a] close reading of [recent Supreme Court opinions] reveals that while the ... Court generally purports to subject ballot access requirements to strict scrutiny, [it] has not used that term con-

---

3. Pursuant to § 48.6, a registrant may indicate her preference for or affiliation with a party

which meets the definition of § 43.2, or decline to indicate any party affiliation at all.

sistently." *Id.* at 1373 n. 9. We concluded that the "Court's most recent cases considering equal protection challenges to ballot access requirements seem to broaden traditional strict scrutiny to incorporate a balancing approach." *Id.* Because the ballot access requirement at issue passed constitutional muster under any standard of review, we explicitly left open for a future case the relationship between the strict scrutiny and balancing tests. *Id.*

We again leave open this issue for another day, because ISP's claim does not involve a state restriction on its access to the ballot. Ballot access cases involve state regulations which burden a candidate's attempts to get on the ballot. *See, e.g., id.* at 1369 (Libertarian party challenged the constitutionality of Missouri's statutory requirement that new political parties certify their presidential electors earlier than established parties and claimed that the requirement impeded the party's ability to place its candidates on ballot; injunction sought requiring Secretary of State of Missouri to place party's candidates for president and vice president on 1988 general election ballot); *McLain v. Meier,* 851 F.2d 1045, 1046–48 (8th Cir.1988) (individuals challenged North Dakota statutes requiring (1) third parties to obtain 7,000 signatures 55 days before June primary in order to appear on ballot; and (2) independent candidates to obtain 1,000 signatures 55 days before general election in order to gain access to the ballot); *Libertarian Party v. Bond,* 764 F.2d 538, 539 (8th Cir. 1985) (Libertarian party challenged constitutionality of Missouri statutes which govern the method by which new political parties are formed for the purpose of placing the party's name and the names of its candidates on ballot). ISP's claim is differ-

ent. Prudently, ISP does not argue that its access to the ballot has been impeded by the state's two percent requirement.[4] Instead, ISP argues that the two percent requirement restricts its ability to obtain a list of supporters, thereby impeding its ability to organize. In fact, Iowa law protects ISP's right of access to the ballot.[5] Therefore, we need not determine the standard of review now appropriate for ballot access cases. Instead, we must identify the appropriate standard of review when a party challenges a state voter registration statute which allegedly burdens the party's and its supporters' ability to organize, but does not impede their access to the ballot.

While we have never inquired into the standard of review appropriate in such cases, the Tenth Circuit has adopted a balancing approach.[6] In *Baer v. Meyer,* 728 F.2d 471 (10th Cir.1984) (per curiam), members of the Citizens and Libertarian parties argued that Colorado unreasonably burdened their ability to organize by not allowing their supporters to note their preference for or affiliation with either party on the state's voter registration forms. Like Iowa, Colorado permitted "registrants to indicate on their registration form their party affiliation only if [it] is with a political party as defined" by state statute. *Id.* at 473. Otherwise, the registrants must indicate that they are unaffiliated. *Id.* Colorado defined "political party" as " 'any political organization which at the last preceding gubernatorial election was represented on the official ballot either by regular party candidates or by individual nominees only if it cast for its gubernatorial candidate at least ten percent of the total gubernatorial vote cast in the state at such election.' " *Id.* at 472 (quoting Colo.Rev. Stat. § 1–1–104(18) (1980)). In Colorado,

---

**4.** In fact, during oral argument both parties conceded that ISP does not present a ballot access claim.

**5.** Section 43.2 provides:
A political organization which is not a 'political party' within the meaning of this section may nominate candidates and have names of such candidates placed upon the official ballot by proceeding under chapters 44 and 45 [i.e., caucus, convention, or petition].

**6.** We note, however, the Tenth Circuit in *Baer,* when confronted with the issue we face today, applied its standard used in ballot access cases without any discussion about whether the appellants, the Citizens and Libertarian parties, presented a ballot access claim. While we hold that ISP's claim does not involve a restriction on access to the ballot, we find the standards used by the Tenth Circuit in the context of this case to be persuasive. *See infra* at 1179.

only the Democratic and Republican parties had previously qualified as political parties. *Id.*

Borrowing from the language of *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), a ballot access case, the *Baer* court noted that the appropriate " 'inquiry is whether the challenged restriction unfairly or unnecessarily burdens "the availability of political opportunity." ' " [7] *Baer,* 728 F.2d at 473 (quoting *Anderson,* 460 U.S. at 793, 103 S.Ct. at 1572, quoting *Clements v. Fashing,* 457 U.S. 957, 964, 102 S.Ct. 2836, 2844, 73 L.Ed.2d 508 (1982) (plurality opinion)); *see also Rainbow Coalition v. Oklahoma State Election Bd.,* 844 F.2d 740, 747 (10th Cir.1988) (balance the state's interest in preventing purely frivolous and insubstantial attempts to designate party affiliation on the registration form with the burden on minority parties' attempts to organize). In resolving this inquiry, the *Baer* court identified various interests. The court noted that it must "give due regard to the state's duty to provide 'substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process.' " *Baer,* 728 F.2d at 474 (quoting *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). This interest, the court concluded, must be balanced against a citizen's right to have " 'a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.' " *Baer,* 728 F.2d at 474

(quoting *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 535, 11 L.Ed.2d 481 (1964)).

In the context of ISP's claim, we find the Tenth Circuit's balancing approach to be persuasive. Therefore, in determining whether Iowa's refusal to permit registrants to designate their support for ISP unnecessarily burdens the opportunity of the citizen and his party to promote their minority interests, we balance the state's broad interest in controlling frivolous party registration of tiny fractional interests, the administrative and financial burdens imposed on the state if forced to accommodate the requests of political organizations to be listed on the voter registration form, and the burdens on the members of political organizations who are attempting to organize.

■ In two of the most recent and most helpful cases involving challenges to state voter registration procedures, the Tenth Circuit invalidated one state law and upheld another. In *Baer,* the Tenth Circuit found that the Colorado voter registration procedures unnecessarily burdened the minority parties. However, *Baer* is distinguishable from the case at bar. First, *Baer* involved a challenge to a statute with a ten percent threshold requirement for an organization to become a political party. The threshold in Iowa is only two percent. In *Baer,* a Libertarian party candidate for governor did poll in excess of two percent of the vote. Therefore, under Iowa law, the Libertarian party would have qualified as a political party. *Baer v. Meyer,* 577 F.Supp. 838, 840 (D.Colo.1984). The lower percentage requirement places a far less onerous burden on ISP supporters in their

---

7. ISP urges us to adopt what it considers to be the standard of the Tenth Circuit. Citing *Baer v. Meyer,* 728 F.2d at 475, ISP argues that Iowa must permit it to allow registrants to indicate their support for a party on the voter registration form if: (1) a political organization already exists in the State under its name; (2) has recognized officials; and (3) has previously placed a candidate on the ballot by petition. We believe ISP misconstrues the *Baer* opinion. While these factors may have been relevant and sufficient in *Baer* to require the state to permit party designation, the same factors might not be relevant in a different context. In fact, in *Rainbow Coalition,* decided four years after *Baer,* the

Tenth Circuit did not even discuss any of these factors in rejecting the appellants' challenge to Oklahoma election statutes which allegedly precluded members of minor political organizations from designating their party affiliation on Oklahoma's voter registration forms. *See Rainbow Coalition,* 844 F.2d at 747. We too reject these factors as the exclusive or even necessarily the most reliable, indicators of the state registration procedure's constitutionality. In balancing a state's interests against the registrant's interests, we must examine the individual facts of each case. We therefore reject the mechanistic approach urged by ISP.

attempt to organize than Colorado's ten percent requirement placed on Libertarian and Citizens parties. We agree with the district court that Iowa's regulation is reasonable and not unnecessarily burdensome.

Second, the *Baer* court's decision was limited only to two political organizations, the Citizens and the Libertarian parties. No other political organizations had managed to field candidates in recent elections. *Baer*, 728 F.2d at 476. In Iowa, many political organizations have outpolled ISP in elections at which ISP candidates were on the ballot. These more successful candidates have been members of several parties, including the Communist, Socialist Workers, American, Libertarian, Citizens, and U.S. Labor parties. If the Iowa statute is unconstitutional as applied to ISP, there would be no basis for denying relief to these numerous other parties which outpolled ISP. As a result, Iowa's interest in controlling frivolous party registration of tiny fractional interests and in ensuring that order, rather than chaos, accompanies the democratic process, is much stronger than the interest that existed in Colorado.

In a case closer to the one at bar, the Tenth Circuit in *Rainbow Coalition* upheld an Oklahoma statute which was far more restrictive than the one in Iowa. In Oklahoma,

> [a] political body desiring to obtain recognized party status must file petitions with the Board 'bearing the signatures of registered voters equal to at least five percent (5%) of the total votes cast in the last General Election either for governor or for electors for President and Vice President.' The party has one year to circulate the petitions, and must file them no later than May 31 of an even-numbered year. A party loses recognized status if its nominee for Governor or its nominees for electors for President and Vice President fail to receive at least ten percent of the total votes cast in any general election. When a party loses recognized status, the party affiliation of those voters registered as members of that party is automatically changed to Independent.

*Rainbow Coalition*, 844 F.2d at 741–42 (citations omitted) (citing Okla.Stat. tit. 26, §§ 1–108, 1–109, 1–110 (1981 & Supp.1987)). In rejecting the constitutional attack on the statute, the court noted that the state has a substantial interest in preventing purely frivolous and insubstantial attempts to designate party affiliation on the registration form. Furthermore, because the voter registration rolls were computerized in only three Oklahoma counties, the administrative burden, although not insurmountable, was substantial. The facts of our case are much closer to *Rainbow Coalition* than *Baer*.

First, the *Rainbow Coalition* court referred to the Libertarian party as a tiny fractional interest although it polled 1.2% of the total votes cast for president in the 1980 general election. *Rainbow Coalition*, 844 F.2d at 742 n. 4, 747. ISP has never polled even as much as one-third of one percent of the total vote cast for either president or governor. In fact, in the 1988 general election, ISP polled only three-hundredths of one percent of the total vote cast for president. If the Libertarian party did not demonstrate the "modicum of support necessary to receive recognized status," *id.* at 747, neither could the ISP which has polled only a percentage fraction of the votes of the Libertarian party.

Second, as with Oklahoma, and unlike Colorado, Iowa has demonstrated a real burden if it is forced to change its voter registration form to comply with ISP's request. It will not only cost Iowa over $45,000 to change its form, but it will force the thirty-five counties which do not purchase data processing services from the State of Iowa to incur additional costs. Furthermore, the large number of parties which have outpolled ISP may then successfully challenge the statute, thereby creating additional, although not significant, financial burdens.

In balancing the interests of the political organization and the state, we conclude that Iowa's refusal to permit registrants to designate ISP on the voter registration form does not unnecessarily burden the opportunity of the citizen or her party to

promote minority interests. First, Iowa has broad latitude in controlling frivolous party registration of tiny fractional interests. Because we conclude that ISP is indeed a tiny fractional interest and many other parties have consistently outpolled ISP, the state's interest in preserving order in its democratic process supports the challenged statute. Furthermore, the burden on the state, while not insurmountable, is also relevant. While the state's administrative and financial burden alone would not be sufficient to justify infringing ISP's associational rights, when considered with the state's interest in controlling party registration of tiny fractional interests, the balance falls in favor of Iowa.

Finally, we note that the purpose for allowing supporters to identify their affiliation with a political party is to enable the parties to conduct closed primaries. *See* Iowa Code §§ 43.1, 43.2, 43.3 (political party as defined by statute must nominate by closed primary). Political organizations, which do not meet the two percent threshold requirement, cannot under state law nominate their candidates by closed primary election. They must nominate by caucus, convention, or petition. *See* Iowa Code § 43.2. ISP does not argue that this requirement burdens its political opportunity. Therefore, while Iowa's restriction on allowing registrants to indicate their preference for or affiliation with a political party is related to the state's interest in enabling political parties to conduct their closed primaries, it is not related to the burdening of ISP's opportunities.

### III.

We conclude that the Iowa voter registration procedures, which do not allow ISP supporters to indicate their preference for or affiliation with ISP on the state's registration form, does not unnecessarily burden the opportunity of ISP supporters to organize. Accordingly, we affirm.